[No. 9478-5-I.   Division One.   August 4, 1982.]

JOAN PARKER, *Appellant,* v. UNITED AIRLINES,
INC., *Respondent.*

*Jon Rosen,* for appellant.

*Shannon Sperry (Robert Brown,* of counsel), for respondent.

SWANSON, J.—Joan Parker sued United Airlines alleging she was illegally discharged from her job. The Superior Court granted summary judgment in favor of United Airlines. Parker appeals the Superior Court judgment.

Parker was employed by United for 12 years. The last position she held at United was receptionist at the Red Carpet Room. United investigated charges that Parker had retained payments intended for United and had misused her travel pass privileges.[1] After a protracted grievance procedure held by United, she was discharged. She disagreed with the discharge and unsuccessfully appealed twice using United's internal grievance procedure.[2] She

---

[1]After an extensive investigation, United found that Parker had kept for herself money collected as payments for Red Carpet memberships and that she had allowed a number of persons other than qualified family members to use her travel pass privileges.

[2]Parker was afforded a hearing first by United's Seattle manager of station operations. On the basis of extensive testimony and a number of documentary exhibits, the manager concluded each charge presented an independent basis for discharge. Parker appealed to the head of United's Western Division. United's Vice–President, Property, Western Division, heard her case. Again, a number of

then filed a breach of employment contract action in superior court. United's motion for summary judgment was granted. Parker claims summary judgment was inappropriate because there are issues of material fact. She also claims that her constitutional right to a hearing was abridged because the trial judge wrote his decision to grant summary judgment prior to oral argument.

The key question concerned whether Parker was an employee terminable at will or whether she was terminable only for just cause. Parker did not produce a written employment agreement indicating her employment could be terminated only for just cause; instead, she argued that she had such an implied agreement with United.

Parker claims the implied agreement arose out of a series of statements made to her by United. The first event of significance was Parker's completion of employment forms which included a promise that she would assign any invention to United she might make during her employment and that she would indemnify United against any losses it might sustain because of Parker's acts, and a statement that "any misrepresentation or concealment of information will be sufficient reason for dismissal." United completed a form which stated

> *regular employment* is contingent upon satisfactory completion of the probationary period as indicated in company regulations. . . . The length of your probationary period is six months.

(Italics ours.)

Parker asserts that statements made at employee orientation sessions also implied a just cause dismissal clause. According to Parker,

> [a]t those sessions, personnel representatives explained the various rights that employees had. Amongst those rights was the right, once the probationary period passed,

---

people testified, exhibits were presented, and the charges discussed. The vice-president upheld the discharge. Parker again appealed, this time to United's president and chief executive officer, who designated United's executive vice-president and chief operating officer-to hear her case. The discharge was upheld.

to determination that there was cause for termination. We were informed that if we believed there was no cause for a disciplinary action we might grieve the action by appealing to higher officials within the company.

Adding to Parker's belief she could be fired only for just cause was a statement by United's president that "You will be treated fairly on your job with United without a union to represent you."

Parker also draws our attention to United's employee manual which makes no reference to termination at will and states an employee may be discharged for cause, furloughed for economic reasons, or resign.

■ In general an employment contract, indefinite as to duration, is terminable at will by either the employer or employee. *Webster v. Schauble,* 65 Wn.2d 849, 400 P.2d 292 (1965); *accord, Lasser v. Grunbaum Bros. Furniture Co.,* 46 Wn.2d 408, 281 P.2d 832 (1955). But such a contract for "permanent" or "steady" employment is terminable by the employer only for just cause if: (1) there is an implied agreement to that effect, or (2) the employee gives consideration in addition to the contemplated services. *Roberts v. ARCO,* 88 Wn.2d 887, 568 P.2d 764 (1977).

■■ In determining whether Parker had an implied employment agreement that was not terminable at United's will, we note the rule that such an agreement cannot be established solely by an employee's subjective understanding or expectations as to his employment. *Lasser v. Grunbaum Bros. Furniture Co., supra.* Even an assurance of "steady" employment is not sufficient. *Gensman v. West Coast Power Co.,* 3 Wn.2d 404, 101 P.2d 316 (1940). The court should look at the alleged "understanding," the intent of the parties, business custom and usage, the nature of the employment, the situation of the parties, and the circumstances of the case to ascertain the terms of the claimed agreement. *Perry v. Sindermann,* 408 U.S. 593, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972). *See Roberts.*

■ In a motion for summary judgment, the court should consider all evidence and all reasonable inferences from the

evidence in favor of the nonmoving party. The court's function is to determine whether a genuine issue of material fact exists. *Ashcraft v. Wallingford,* 17 Wn. App. 853, 565 P.2d 1224 (1977). Summary judgment is appropriate only if reasonable men would reach only one conclusion. *Wilber Dev. Corp. v. Les Rowland Constr., Inc.,* 83 Wn.2d 871, 523 P.2d 186 (1974).

In light of the foregoing considerations, we have reviewed the record and find no material evidence of an implied agreement. Parker's claims amount to no more than her own personal understanding that she would be discharged only with just cause. Her promises to indemnify United against losses it might sustain because of her acts and to assign to United inventions made during the course of work,[3] and her agreement that any misrepresentation of information would be reason for dismissal were not sufficient as additional and independent consideration to defeat United's right to terminate employment at will. These terms and conditions merely defined the required services, put Parker on notice, and indicated her common law liability. *Cf. Heideman v. Tall's Travel Shops, Inc.,* 192 Wash. 513, 73 P.2d 1323 (1937) (foregoing of job opportunities is not sufficient independent consideration to upset an employer's right to terminate employment at will).

We also reject Parker's claim that the grievance regulations imply a just cause discharge standard. The purpose of United's nonunion, nonmanagement grievance procedure, which is unilaterally set and not negotiated, is not to determine if there is just cause for discharge. Rather, the grievance procedure was instituted for the stated reason that:

> In any sizeable organization, friction or misunderstanding may arise because of the wide variety of circumstances under which employees work. It is, therefore, to the advantage of both the employee and the company

---

[3] Parker suggested United utilize a framing device that would allow United to hang decorative posters in a seemingly permanent fashion, yet would provide for easy removal and insertion if changes were desired. She did not assign the idea to United.

that a method of presenting problems be provided so that corrections and adjustments can be made where appropriate. In this light, the employee grievance procedure has been established as outlined below *to provide a method for correcting the misapplication of company policies and/or procedures.*

(Italics ours.) Thus, the grievance process does no more than implement a company policy to treat employees in a fair and consistent manner, allowing full discussion of adverse actions.

The employment status form, to which Parker assented, stated that she would be granted "regular employment" upon completion of a 6–month probationary period. United's regulations define a "regular" employee as someone "retained for an indefinite period of time." Status as a regular or steady employee does not imply an agreement to discharge an employee only for cause. *Roberts; accord, Gensman v. West Coast Power Co., supra.*

The statement by United's president which we quoted earlier is amorphous and elusive. We will not attempt to give it content. Parker was unjustified in relying on it to imply a just cause discharge clause in her employment contract.

Finally, the lack of the words "termination at will" in United's employment manual does not imply employment termination requires just cause.

In summary, Parker's claim of an implied agreement amounts merely to her subjective understanding that she would be discharged only with just cause. As noted above, such an understanding is insufficient in law to imply an agreement. The motion for summary judgment was properly granted.

■ Parker's last claim is that her constitutional rights were abridged because the trial judge wrote his decision to grant summary judgment prior to oral argument. We find no error. Appellant received a meaningful hearing, which complied with due process requirements, on the motion for summary judgment. Due process requirements are not

technical, nor do they require any particular form or procedure. *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 40 L. Ed. 2d 406, 94 S. Ct. 1895, 1901 (1974). It is only required that a party receive proper notice of proceedings and an opportunity to present his position before a competent tribunal. *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.,* 87 Wn.2d 327, 335, 553 P.2d 442 (1976), citing *Watson v. Washington Preferred Life Ins. Co.,* 81 Wn.2d 403, 408, 502 P.2d 1016 (1972). Integrity of the factfinding process and basic fairness of the decision are principal due process considerations. *United Nuclear Corp. v. General Atomic Co.,* 93 N.M. 105, 597 P.2d 290, 308-09 (1979). Oral argument on a motion is not a due process right. *United Nuclear Corp.* In the case at bar, the trial court's order clearly shows that the parties appeared and that the trial court considered all pleadings, briefs, and affidavits of the parties. Thus, appellant received due process rights and a fair hearing.

The judgment of the trial court is affirmed.

ANDERSEN, C.J., and RINGOLD, J., concur.

Reconsideration denied September 20, 1982.

Review denied by Supreme Court December 17, 1982.