[No. 12881-4-III.    Division Three.    July 7, 1994.]

JAMES WESLEY LORDS, ET AL *Respondents*, v. NORTHERN AUTOMOTIVE CORPORATION, ET AL, *Appellants*.

590

*Richard P. Lentini* and *Ryan, Swanson & Cleveland,* for appellants.

*Daniel M. Danforth* and *Underwood, Campbell, Brock & Cerutti P.S.,* for respondents.

[As amended by order of the Court of Appeals September 1, 1994.]

THOMPSON, C.J. — Northern Automotive Corporation appeals a judgment entered on a jury verdict which awarded former employee, James Wesley Lords, $80,000 in economic damages for handicap discrimination and $150,000 emotional distress damages for negligent infliction of emotional distress. Northern also appeals the denial of several of its pretrial and posttrial motions and the attorney fee awards.

Lords cross-appeals the summary judgment dismissal of his contract cause of action, several evidentiary rulings, the court's 5-year limitation on front pay and a jury instruction regarding his age discrimination claim.

We affirm the summary judgment dismissal of Lords' contract cause of action; affirm the judgment dismissing Lords' age discrimination cause of action; reverse the award of damages for negligent infliction of emotional distress; affirm the handicap discrimination verdict, but remand for a new trial on economic damages; and reverse and remand as to attorney fees.

## FACTUAL BACKGROUND

James Wesley Lords was an employee of Northern Automotive Corporation until November 1987. He became a

Northern employee when Schuck's Auto Supply bought out and merged with his prior employer, Checker Auto Parts, and became Northern Automotive Corporation. Previously, Lords worked for Yellow Front Stores in Spokane. When they closed, he transferred to a Checker store. Apparently, Checker stores and Yellow Front Stores were owned by the same parent company. In all, Lords worked for Northern and its predecessor companies for almost 20 years. He suffered heart attacks in September 1984, June 1986 and October 1986. He was diabetic.

Prior to the Schuck's-Checker merger, the two companies operated competing stores in the Spokane market. When they merged, Spokane had four Schuck's stores and six Checker stores. Eventually, three of the Checker stores were closed and the remaining three were "converted" to Schuck's stores.

Darwin Streeter was a district manager for Checker; Larry Brantner was a regional manager for Schuck's. After the merger, Brantner became Streeter's supervisor. Streeter continued to supervise Checker managers, including Lords, and Brantner continued to supervise Schuck's managers in Spokane.

In early 1987, Northern devised an evaluation form for rating store managers. It contained 11 categories and used a rating scale of 1 to 5 for 8 of the 11 categories. From February through March 1987, Brantner evaluated the managers of Schuck's Spokane stores and Streeter evaluated the five managers of Checker's Spokane stores, including Lords. Lords received an overall rating of 3, the lowest rating of Checker's Spokane managers.

In early 1987, Lords managed the Checker store on Sprague Avenue. He was there until it was closed in March 1987. He then transferred to the Checker store on Francis Avenue and remained there until it was closed. On September 17, 1987, Lords was notified he would not be retained by Northern as a store manager. He did not have a written employment contract. Northern paid Lords 13 weeks' severance pay and did not rehire him.

Lords remained unemployed until December 1989 when he was hired by All Western Industrial Supply as a salesman. His wages were lower than at Northern and he received fewer benefits.

Prior to finding new employment at All Western, Lords commenced this lawsuit for discrimination based on age and handicap, negligent infliction of emotional distress, outrage, and breach of express and implied contract. His causes of action for outrage, breach of contract, and negligent infliction of emotional distress based on a duty not to discriminate were dismissed by pretrial summary judgment motions brought by Northern. His causes of action for age and handicap discrimination and negligent infliction of emotional distress went to trial by jury.

Northern's motion for directed verdicts was denied. The jury found no unlawful age discrimination, but did find handicap discrimination and negligent infliction of emotional distress. Northern's motion for judgment notwithstanding verdict, new trial or remittitur was denied. Lords was awarded attorney fees through trial and attorney fees for defending Northern's posttrial motions. Lords' motion for reconsideration of attorney fees was denied.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Contentions. Northern contends there is no cause of action in Washington for negligent infliction of emotional distress based on termination of an at-will employee. The reason is, an employer has the right to terminate such employee for any reason, or no reason. He relies primarily on *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984) and *Calhoun v. Liberty Northwest Ins. Corp.*, 789 F. Supp. 1540, 1548 (W.D. Wash. 1992). Although there is an exception for violations of public policy, Northern contends Lords' negligence action was not based on a public policy exception. *Thompson*, at 233; *Roe v. Quality Transp. Servs.*, 67 Wn. App. 604, 838 P.2d 128 (1992). *See also Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 815 P.2d 1362 (1991).

Lords does not challenge *Thompson, Roe* or *Calhoun,* nor does he contend a public policy exception is at issue. He contends his negligence action was based on actions arising *during* the course of employment, not on termination. These actions consisted of promises of continued employment, pay continuation, relocation and preferential rehiring, as well as failure to return phone calls and communications with him through employees he once supervised and those holding lower level management positions. According to Lords, actions for negligent infliction of emotional distress arising during employment are recognized in Washington. He cites *Wheeler v. Catholic Archdiocese,* 65 Wn. App. 552, 829 P.2d 196, *review granted,* 120 Wn.2d 1011 (1992), *Huber v. Standard Ins. Co.,* 841 F.2d 980 (9th Cir. 1988), and *Roth v. Kay,* 35 Wn. App. 1, 4, 664 P.2d 1299, *review denied,* 100 Wn.2d 1026 (1983).

■ No Negligence Cause of Action. As Northern contends, Washington does not recognize a cause of action for negligent infliction of emotional distress based on termination of an at-will employee, unless the termination violates "a clear mandate of public policy". *Roe,* at 607 (quoting *Thompson,* at 232). *See also Lambert v. Morehouse,* 68 Wn. App. 500, 503-06, 843 P.2d 1116 (employer's faulty investigation of employee's misconduct resulting in discharge does not give rise to negligence action), *review denied,* 121 Wn.2d 1022 (1993); *Calhoun,* at 1548 (routine discharge for poor work performance does not give rise to cause of action for negligent infliction of emotional distress). With few exceptions, other jurisdictions have uniformly rejected employees' negligence actions against their employers which resulted in their discharge. *See* 3A Arthur Larson & Lex K. Larson, *Employment Discrimination* § 119.52 (1991).

■ Northern's alleged promises of continued employment, relocation, pay continuation and preferential rehiring arose out of the employment relationship. Although such promises might give rise to a cause of action based on an express or

implied contract,[1] they do not give rise to a cause of action for negligence. Emotional distress damages are unavailable in a breach of contract action. *Gaglidari*, at 440. Further, even though the promises were allegedly made during the course of employment, any breach would occur only upon termination and a refusal to rehire.

■ As to Northern's alleged failure to communicate with Lords in the manner he expected or desired, no legal duty was breached. A claim for negligent infliction of emotional distress must meet the traditional requirements of "duty, breach, proximate cause, and damage or injury". *Hunsley v. Giard*, 87 Wn.2d 424, 434, 553 P.2d 1096 (1976). The existence of a duty is a question of law and depends on mixed considerations of "logic, common sense, justice, policy, and precedent". *Hartley v. State*, 103 Wn.2d 768, 779, 698 P.2d 77 (1985) (quoting *King v. Seattle*, 84 Wn.2d 239, 250, 525 P.2d 228 (1974)); *DuVon v. Rockwell Int'l*, 116 Wn.2d 749, 753, 807 P.2d 876 (1991).

Even assuming Northern owed Lords a legal duty regarding its methods of communication, there was no evidence establishing the standard of care and no compelling public policy advanced for imposing liability on an employer for not returning phone calls or for communicating decisions through a particular hierarchy of employees.[2] *Lawson v. Boeing Co.*, 58 Wn. App. 261, 792 P.2d 545 (1990), *review denied*, 116 Wn.2d 1021 (1991). Not all actions which cause harm result in legal liability. *Hunsley*, at 434.

The actions Lords complains of are clearly distinguishable from the employer's actions in *Wheeler*, which he cites. In

---

[1]See discussion pages 607-08. The trial court correctly determined that the promises alleged did not modify Lords' status as an at-will employee.

[2]Jury instructions 14 and 16 simply stated that Lords had the burden of proving "that the Defendant acted or failed to act in one of the ways claimed by the Plaintiff and that in so acting, or failing to act, the Defendant was negligent;

". . . .

"Negligence is the failure to exercise ordinary care. It is the doing of some act which a reasonably careful person would not do under the same or similar circumstances or the failure to do something which a reasonably careful person would have done under the same or similar circumstances."

*Wheeler*, an employee asserted causes of action for negligent supervision of a coemployee and negligent infliction of emotional distress. The injuries allegedly resulted from harassment by the coemployee. At page 565 n.3, *Wheeler* noted with approval the trial court's treatment of the separate causes of action as alternative statements of the *same claim.* Citing *Scott v. Blanchet High Sch.*, 50 Wn. App. 37, 44, 747 P.2d 1124 (1987), *review denied*, 110 Wn.2d 1016 (1988), *Wheeler* held a cause of action for negligent supervision is recognized in Washington. But negligent supervision of a coemployee is not at issue here.

Lords also relies on *Roth*, a negligence action brought by an injured employee against his physician for failing to timely file a workers' compensation claim. We fail to see how *Roth* supports Lords' negligence claim. As to Lords' reliance on *Huber*, the cause of action alleged by the employee under California law was intentional infliction of emotional distress. Further, although *Huber* allowed the employee to proceed with his claim for tortious breach of an implied covenant of good faith and fair dealing, subsequent decisions hold that, under California law, breach of an implied covenant is no longer a negligence claim, it is a purely contractual claim. *See, e.g., Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 765 P.2d 373, 254 Cal. Rptr. 211 (1988).

Emotional Distress Damages Not Awarded for Discrimination. Lords contends he is entitled to emotional distress damages whether or not there is a negligence cause of action because the jury found substantial emotional distress as a result of Northern's conduct and as a result of intentional discrimination.

As shown by its response on the special verdict form, the jury awarded Lords emotional distress damages for negligent infliction of emotional distress. It answered "no" to the question whether Northern's discrimination caused emotional distress damages.

Other Issues Not Reached. Since there was no cause of action for negligent infliction of emotional distress as a matter of law, the trial court erred by submitting the negligence

cause of action to the jury, denying Northern's motion for directed verdict, and instructing the jury on negligence. We therefore do not reach Northern's contentions that Lords' negligence claim was barred by the Industrial Insurance Act; objective symptomatology is required to recover for negligent infliction of emotional distress, and it was error for the trial court to admit evidence of Northern's oral promises.

### EVIDENTIARY RULINGS

Contentions. Northern contends the trial court abused its discretion in allowing Larry Brantner to answer questions as to whether Lords' physical condition could have affected Darwin Streeter's evaluation of Lords in 1987. He contends such testimony was speculative and highly prejudicial because it was the only evidence suggesting Lords' physical condition affected his performance rating.

Discussion. Mr. Brantner was a witness for Northern. On direct, Northern's counsel established Brantner's lack of personal knowledge about whether Lords' heart attacks affected his job performance or his 1987 performance rating. Nevertheless, Lords' counsel was permitted to ask whether Streeter took Lords' health into account.

ER 602 prohibits a witness from testifying on a matter unless evidence is introduced to support a finding that the witness has personal knowledge of it. Here, the challenged questions on cross examination called for speculation. However, because Northern was not prejudiced when Brantner stated he did not know whether Streeter considered Lords' health in his evaluations, the error was harmless.

### DEFINITION OF HANDICAP

Jury Instruction. The jury was given the following definition of "handicap":

> Handicap means the presence of a sensory, mental or physical condition, which is either:
>
> 1. Medically cognizable or diagnosable; or
>
> 2. Exists as a record or history; or
>
> 3. Is perceived to exist, whether or not it exists in fact.

Contentions. Northern contends the trial court erred in failing to give its proposed instruction which would have informed the jury that a handicap is an abnormal condition and proof of handicap requires evidence of a real or perceived limitation on an employee's ability to perform his job.[3] *Michelsen v. Boeing Co.*, 63 Wn. App. 917, 826 P.2d 214 (1991). Northern contends the instruction given allowed the jury to find a handicap based solely on the fact Lords had a medically diagnosable condition.

Lords contends the instruction given was specifically approved in *Phillips v. Seattle*, 111 Wn.2d 903, 907, 766 P.2d 1099 (1989) and *Pannell v. Food Servs. of Am.*, 61 Wn. App. 418, 437-38, 810 P.2d 952, 815 P.2d 812 (1991), *review denied*, 118 Wn.2d 1008 (1992). He argues the absence of the word "abnormal" was not significant because undisputed evidence showed he suffered a heart condition and diabetes, and both are abnormal. Further, absence of the word "abnormal" did not prevent Northern from arguing its theory of the case, especially given other jury instructions. *Impero v. Whatcom Cy.*, 71 Wn.2d 438, 430 P.2d 173 (1967).

Discussion. The definition of handicap for purposes of RCW 49.60 actions is derived from WAC 162-22-040. *Phillips*, at 906-07. It states:

> (a) A condition is a "sensory, mental, or physical handicap" if it is an abnormality and is a reason why the person having the condition did not get or keep the job in question . . . In other words, for enforcement purposes a person will be considered to be *handicapped* by a sensory, mental, or physical condition if he or she is *discriminated against because of the condition* and the condition is abnormal.

> (b) "The presence of a sensory, mental, or physical handicap" includes, but is not limited to, circumstances where a sensory, mental, or physical condition:
> (i) Is medically cognizable or diagnosable;
> (ii) Exists as a record of history; or
> (iii) Is perceived to exist, whether or not it exists in fact.

---

[3]Northern proposed the following instruction:

"A physical condition is a handicap if it is an abnormality which (1) restricts the person's ability to perform the job or (2) the employer believes restricts the person's ability to perform the job and is a reason why the person was terminated, did not keep the job, or was not hired."

■ The definition of handicap contained in WAC 162-22--030 is used for affirmative action and reporting purposes.[4] However, the "law enforcement" definition of WAC 162-22--040 is used in unfair practice actions under RCW 49.60. *Phillips*, at 907. The "law enforcement" definition "requires factual findings of both (1) the presence of an abnormal condition, and (2) employer discrimination against the employee plaintiff *because* of that condition." *Jane Doe v. Boeing Co.*, 121 Wn.2d 8, 16, 846 P.2d 531 (1993).

■ The instruction given here failed to define a handicap in terms of an "abnormal" condition. However, when all instructions are considered, *Brown v. Spokane Cy. Fire Protec. Dist. 1*, 100 Wn.2d 188, 194, 668 P.2d 571 (1983), the jury was adequately instructed. Collectively, they did not allow the jury to find a handicap based solely on the existence of a medical condition. Two instructions required the jury to find that the handicap was the "determining factor" in Northern's decision to terminate and "but for his handicap, [Lords] would not have been laid off". A third instruction required the jury to find that Northern intended to discriminate on account of Lords' health. As Lords contends, neither *Phillips* nor *Doe* requires that an employee be unable to perform a particular job in order to prove the existence of a handicap.

## SUFFICIENCY OF EVIDENCE TO SUPPORT

## DISCRIMINATION VERDICT

<u>Contentions</u>. Northern contends Lords failed to establish a prima facie case of handicap discrimination because he did not show he was within the affected class and was performing satisfactorily. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 362, 753 P.2d 517 (1988). Further, there

---

[4]WAC 162-22-030(2)defines handicapped persons as:

"Persons with physical, mental, or sensory impairments that would impede that individual in obtaining and maintaining permanent employment and promotional opportunities. The impairments must be material rather than slight; static and permanent in that they are seldom fully corrected by medical replacement, therapy, or surgical means."

was no evidence as to incriminating statements, a pattern or practice of discrimination or medical evidence of a continuing handicap. *Matthews v. Allis-Chalmers*, 614 F. Supp. 11 (N.D. Ill. 1984), *aff'd*, 769 F.2d 1215 (7th Cir. 1985).

Northern also contends that even if Lords established a prima facie case, he failed to produce sufficient evidence to meet his ultimate burden of proving that Northern's expressed reason for termination was a pretext. *Grimwood*, at 363-66; *Michelsen*, at 920; *Hatfield v. Columbia Fed. Sav. Bank*, 68 Wn. App. 817, 824, 846 P.2d 1380, *review denied*, 121 Wn.2d 1030 (1993). In fact, Northern argues, termination was based on a legitimate, nondiscriminatory reason.

■ ■ Discussion. RCW 49.60.180(2) makes it an unfair practice for an employer to discharge any person because of the presence of any sensory, mental or physical handicap. *See also* RCW 49.60.010;WAC 162-22-040(1)(a) . To establish his claim of wrongful discharge based on handicap, Lords had to establish (1) the presence of a handicap; (2) satisfactory performance of job functions; (3) replacement by a person outside the protected group; and (4) his real or perceived handicap was the reason for his discharge. *Michelsen; Simmerman v. U-Haul Co.*, 57 Wn. App. 682, 789 P.2d 763 (1990). Once all evidence was in, issues of Lords' prima facie case, Northern's burden to rebut with a legitimate nondiscriminative reason for discharge and Lords' burden of showing pretext became irrelevant. *Hill v. GTE Directories Sales Corp.*, 71 Wn. App. 132, 144, 856 P.2d 746 (1993).

A. Presence of Handicap. Lords introduced evidence which reflected the presence of a heart condition and diabetes. These conditions were medically cognizable or diagnosable and existed as a matter of record or history. RCW 49.60.180; *Jane Doe*, at 16. However, since Lords testified that neither condition prevented him from performing his job except when he missed work and had a lifting limitation following surgery, the existence of a handicap depended on evidence establishing Northern's *perception* of one.

Mr. Streeter stated in cross examination that Lords' health affected his work performance when it took him away

from his job. Further, the stress of "trying to lift, or whatever" interfered with his work. He transferred Lords to a different store in March 1987 to avoid heavy lifting and Lords testified that Streeter asked him whether an employee with a heart condition could perform the job and if his work was too strenuous or stressing for him.

The evidence was sufficient for the jury to find that Northern perceived Lords' heart condition as a handicap. It was insufficient to support a finding that diabetes was a perceived handicap.[5]

■ B. Satisfactory Job Performance. The evidence shows Lords was evaluated as a manager in October 1983, in April 1984, in April 1985, and in the spring of 1987. The 1983 evaluation rated a manager's total performance "[c]ompared to expectations for the position". The categories were: "Outstanding, Above Average, Average, Below Average, New, Need More Time". Lords was rated "Average". In evaluations for 1984, overall employee performance was rated "Above Expectations, Meeting Expectations, Below Expectations". Lords was rated "Meeting Expectations". In his evaluation for 1985, the same rating system was utilized as in 1984. Lords was again rated "Meeting Expectations". As Northern contends, when determining satisfactory job performance, it is the perception of the employer which is relevant. *Grimwood*, at 360.

Although Lords' 1987 rating was not as high as other Checker managers,[6] the evidence was sufficient for the jury

---

[5]Lords testified his diabetes had no effect on his work, his employer did not treat him differently because of it, and he did not think it was the cause of his termination. Mr. Streeter also testified that as far as he knew, Lords' diabetes did not interfere with his work. Lords told other employees he was diabetic in case he went into insulin shock on the job and he carried a tin of sugar cubes to help avert shock. As to Mr. Streeter's statement to Lords, "You better eat your sugar now . . . we're really going to have to work today", it was made in 1983, prior to their setting up a new store in Wenatchee.

[6]In Mr. Streeter's 1987 evaluation of the five Checker managers, Mr. Demianew received an overall rating of 5-; Mr. Geso and Mr. Hair each received 4; Mr. Tedrow received 4-; and Mr. Lords received 3. Mr. Demianew, Mr. Geso and Mr. Hair were retained as managers after the merger. Mr. Tedrow was offered a demotion and pay continuation. He refused, but was contacted by Mr. Geso 2 years later and hired as a senior assistant.

to find that Lords continued to perform satisfactorily until terminated.

C. Retention of Persons Outside Protected Group. Witnesses for Northern testified the company intended to retain only three of· the five Checker managers. Of the three managers selected, none were within the protected group. The evidence also established that Northern advertised for management trainees for the Spokane area *after* Lords was terminated.

D. Reason for Termination.

Whether a condition was the reason for a dismissal depends upon the documentation of the employer, testimony regarding the dismissal, and other relevant facts. . . . The issue under WAC 162-22-040(1)(b) depends upon expert medical testimony under (b)(i), on relevant medical documentation under (b)(ii), and on state of mind in (b)(iii).

*Phillips v. Seattle*, 111 Wn.2d 903, 909-10, 766 P.2d 1099 (1989).

There was testimony indicating that Streeter discussed Lords' physical condition with another manager as well as with Brantner around the time of the 1987 evaluations. Brantner also testified the 1987 manager evaluation system he helped create was designed in such a way that management potential and customer service (2 of the 11 categories) could be influenced by an employee's health.

Lords testified that Northern promised all managers they would retain their management positions and would be offered a demotion, opportunity to relocate, and pay continuation. Although Lords told Northern he did not want to relocate, he testified he was not first told what the relocation benefits would be. Lords also testified he was not offered a demotion or pay continuation like other managers without handicaps. Although Streeter testified that Lords told him he would "not take a step back" and Mr. Tedrow testified that Lords told him he was offered a temporary demotion but rejected it, the jury apparently believed Lords. An appellate court does not reweigh the evidence or reevaluate the credibility of witnesses. *In re Sego*, 82 Wn.2d 736, 739-40,

513 P.2d 831 (1973). The evidence was sufficient for the jury to find that Lords was not retained as a manager, reassigned to a position below manager, or rehired because of a perceived handicap.

## FRONT PAY AWARD

Contentions. In its appeal, Northern contends Lords is not entitled to front pay after he accepted a new job because he failed to mitigate damages by seeking employment comparable to what he had at Northern. *Sangster v. United Air Lines, Inc.*, 633 F.2d 864, 868 (9th Cir. 1980), *cert. denied*, 451 U.S. 971 (1981); *Kubista v. Romaine*, 87 Wn.2d 62, 67, 549 P.2d 491 (1976); *Burnside v. Simpson Paper Co.*, 66 Wn. App. 510, 529, 832 P.3d 537 (1992), *aff'd*, 123 Wn.2d 93, 864 P.2d 937 (1994).

In his cross appeal, Lords contends the court erred in limiting front pay to a 5-year period because the appropriate time period was a question for the jury. Lords contends there is a presumption that an illegally discharged employee would have continued working for the same employer until retirement, unless the employer provides evidence to the contrary. He cites *Xieng v. Peoples Nat'l Bank*, 120 Wn.2d 512, 531, 844 P.2d 389 (1993).

Lords also contends that in cases of intentional torts and discrimination actions, a plaintiff has no duty to mitigate. *Sunland Invs., Inc. v. Graham*, 54 Wn. App. 361, 773 P.2d 873 (1989). Even if there were such duty, he argues he conducted an extensive job search for 2 years and accepted the first job offered. After finding a job, he continued to seek work which paid more than the job he held.

Future Earnings. RCW 49.60.030(2) permits a plaintiff to recover actual damages for handicap discrimination. Lost future earnings, known as "front pay", is a type of actual damage which may be awarded under RCW 49.60. *Xieng v. Peoples Nat'l Bank*, 63 Wn. App. 572, 583, 821 P.2d 520 (1991), *aff'd*, 120 Wn.2d 512,844 P.2d 389 (1993); *Malarkey Asphalt Co. v. Wyborney*, 62 Wn. App. 495, 514, 814 P.2d 1219, 821 P.2d 1235 (1991); *Hayes v. Trulock*, 51

Wn. App. 795, 802, 755 P.2d 830, *review denied*, 111 Wn.2d 1015 (1988).

Mitigation Required. To be entitled to front pay, a plaintiff must make reasonable attempts at mitigation. *See Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1346-47 (9th Cir. 1987) (front pay awards, like back pay awards, must be reduced by the amount plaintiff could earn using reasonable mitigation efforts), *cert. denied*, 484 U.S. 1047 (1988). The question of whether an employee has mitigated damages is for the jury. *Sutton v. Shufelberger*, 31 Wn. App. 579, 582, 643 P.2d 920 (1982). Here, the jury was correctly instructed on mitigation.[7] *Bingaman v. Grays Harbor Comm'ty Hosp.*, 103 Wn.2d 831, 699 P.2d 1230 (1985).

There was ample evidence of Lords' attempts to mitigate his damages. He searched for employment as soon as it became apparent Northern would not rehire him. He accepted the first job offered him. Thereafter, he looked for a higher paying job.

Cutoff Period. Front pay should be awarded "for a reasonably certain period of time that does not exceed the likely duration of the terminated employment." *Hayes*, at 802 (quoting *Smith v. Atlas Offshore Boat Serv., Inc.*, 552 F. Supp. 128, 130 (S.D. Miss. 1982)). Although front pay was not at issue, *Xieng* held a back pay award should not be cut off when the employee's position was eliminated, unless the employer shows the employee would not have been retained in some other capacity. *Xieng*, 120 Wn.2d at 531-32. In arriving at this conclusion, *Xieng* noted its reasoning was consistent with *MacDissi v. Valmont Indus., Inc.*, 856 F.2d 1054, 1060 (8th Cir. 1988) ("courts will presume for the purposes of awarding relief that an illegally discharged employee would have continued working for the employer until he or she reaches normal retirement age, unless the employer provides evidence to the contrary") and with *Sims v. Mme.*

---

[7]The jury was instructed to include the following items of economic damage if it found discrimination by Northern.

"1. The reasonable value of wages and benefits lost until December 31, 1992, reduced by any severance pay actually received and wages and benefits actually earned, and any reduction due to the failure to mitigate by the Plaintiff, if any."

*Paulette Dry Cleaners*, 638 F. Supp. 224, 233 (S.D.N.Y. 1986) (general reduction in work force not a valid defense to front pay). Otherwise, the employee bears the burden of proving lost future wages for a reasonable period of time. *Hayes*, at 802; *Kohn v. Georgia-Pacific Corp.*, 69 Wn. App. 709, 726, 850 P.2d 517, *review denied*, 122 Wn.2d 1010 (1993).

No Washington case has directly addressed the issue of whether, in a jury trial, the court should first determine the cutoff date for a front pay award. Although in *Xieng* the trial court found an employee's disability would continue for a 5-year period and was upheld on appeal, *Xieng* was a bench trial.

Case law regarding determinations of future lost earnings generally favors allowing the jury to determine the number of years to be included. For example, in *Sherman v. Seattle*, 57 Wn.2d 233, 356 P.2d 316 (1960), a jury's determination of a 3-year-old's lost future earning capacity was upheld even though speculative. *See also Allen v. Fish*, 64 Wn.2d 665, 393 P.2d 621 (1964). As stated in *Bartlett v. Hantover*, 9 Wn. App. 614, 620, 513 P.2d 844 (1973), *aff'd in part, rev'd in part*, 84 Wn.2d 426, 526 P.2d 1217 (1974):

> The requirement of the law leaves the fixing of the amount of loss to the discernment of the jury. Thus, a child of 3 and an unemployed man of 71 can suffer a loss of earning capacity. Evidence of physical impairment must be presented and from that evidence of injury to the body and/or mind of the plaintiff, the jury must assess the amount that will compensate for his lessened money-making faculties and reduced income potentialities.

(Citations omitted.)

As Lords contends, there are three possible rules regarding front pay determinations: (1) allow the court to establish the parameters of front pay, then allow the jury to determine the amount as was done in this case; (2) allow the jury to determine the entire issue as occurs in nondiscrimination cases under Washington law; or (3) allow the court, in its discretion, to determine the entire issue of front pay as some federal circuit courts do.

There is little to recommend the first option — the one followed by the trial court here. Determining a front pay award in a discrimination case is no more speculative than determining future wage losses of a 3-year-old in a personal injury case. *Sherman.* The likely duration of the terminated employment is an issue of fact, not law. The third option is contrary to *Pannell v. Food Servs. of Am.,* 61 Wn. App. 418, 810 P.2d 952, 815 P.2d 812 (1991), *review denied,* 118 Wn.2d 1008 (1992), *Kohn,* and dicta in *Xieng.* Option 2 is most consistent with analogous case law and is most likely to achieve an equitable result. *Sherman; Allen; Bartlett.* Once an employee produces evidence from which a reasonable future employment period may be projected, the amount of front pay, including the likely duration of employment, should go to the jury. *Cf. Pannell,* at 442; *Kohn,* at 726. In an at-will employment situation, an employee might expect to be employed for "a reasonable future period", although not necessarily until retirement. *Cf. Shore v. Federal Express Corp.,* 777 F.2d 1155 (6th Cir. 1985).

The trial court erred in limiting front pay to 5 years after termination. There was no legal basis for the limitation. *Hayes,* at 803. Any limitation was a matter of disputed fact for the jury. Therefore, we remand for a new trial as to economic damages. Front pay, as well as back pay, is a consideration for the jury.

### Contract Cause of Action

Contentions. In his cross appeal, Lords contends the trial court erred in dismissing his contract action because there was undisputed evidence that he was promised continued employment and preferential rehiring status and he relied on those promises. *Thompson v. St. Regis Paper Co.,* 102 Wn.2d 219, 685 P.2d 1081 (1984). He contends the intent to form a contract was a question of fact for the jury. *Swanson v. Liquid Air Corp.,* 118 Wn.2d 512, 524, 826 P.2d 664 (1992).

Northern contends Lords' cross appeal should not be considered because he makes no assignments of error, his argu-

ment is inadequate, and he fails to reference the record. In any case, his contract claims were properly dismissed because he failed to raise a genuine issue of material fact; his employment was simply employment at will. *Parker v. United Airlines, Inc.*, 32 Wn. App. 722, 725, 649 P.2d 181, *review denied*, 98 Wn.2d 1011 (1982).

■ Discussion. Oral assurances of continued employment and an employee's forgoing of other employment opportunities do not create an implied employment contract. *Roberts v. ARCO*, 88 Wn.2d 887, 894-96, 568 P.2d 764 (1977); *Parker*, at 725. The employer must create an atmosphere of job security and fair treatment and make promises of specific treatment in specific situations which induce the employee to remain on the job and not actively seek other employment. *Thompson*, at 230. As stated in *Parker*, at 725:

> [An implied employment] agreement cannot be established solely by an employee's subjective understanding or expectations as to his employment. Even an assurance of "steady" employment is not sufficient. The court should look at the alleged "understanding," the intent of the parties, business custom and usage, the nature of the employment, the situation of the parties, and the circumstances of the case to ascertain the terms of the claimed agreement.

(Citations omitted.)

■ In a summary judgment motion, all evidence and reasonable inferences from the evidence must be viewed in a light most favorable to the nonmoving party. *Central Wash. Bank v. Mendelson-Zeller, Inc.*, 113 Wn.2d 346, 351, 779 P.2d 697 (1989). Although Lords fails to reference the record, the trial court considered Lords' affidavit which contained the following averments:

> The company . . . made promises to me regarding my employment. The company President, Mr. Siewert promised at a meeting of company officials in 1986, that if we worked hard, we would all have jobs. Furthermore, Mr. Streeter promised me that he would try to find me another position in the company.
>
> Company policy and procedure also dictated that employees should be treated fairly. . . .
>
> I relied on these representations and the training of the company in this regard.

Mr. Streeter admitted telling Lords he would try to find something for him within the company if he would take a demotion until something developed. However, such evidence did not create an issue of fact sufficient to preclude summary judgment. The promises cannot be interpreted as anything more than an offer for permanent or steady employment, which is the equivalent of employment at will. *Roberts*, at 894-96; *Parker*, at 725. The summary judgment order is affirmed.

## AGE DISCRIMINATION

Contentions. In his cross appeal, Lords contends the trial court erred in allowing the jury to be instructed that age must be the "determining" factor in an employer's decision to treat an aged employee unequally. He contends age need only be a "substantial factor". *Allison v. Housing Auth.*, 118 Wn.2d 79, 95, 821 P.2d 34 (1991).

Northern contends the jury was properly instructed that Lords had to prove that age was a determining factor. *Stork v. International Bazaar, Inc.*, 54 Wn. App. 274, 285, 774 P.2d 22 (1989). According to Northern, the holding in *Allison* is limited to retaliation cases because of the need to encourage reporting of discriminatory conduct.

Discussion. The "ultimate issue" in an age discrimination case is whether age was a determining factor in the employer's decision to terminate an employee. *Sellsted v. Washington Mut. Sav. Bank*, 69 Wn. App. 852, 857, 851 P.2d 716 (citing *Hatfield v. Columbia Fed. Sav. Bank*, 57 Wn. App. 876, 880, 790 P.2d 1258 (1990)), *review denied*, 122 Wn.2d 1018 (1993); *Stork*, at 284. *See also Hatfield v. Columbia Fed. Sav. Bank*, 68 Wn. App. 817, 824, 846 P.2d 1380 (citing *Stork*, at 284), *review denied*, 121 Wn.2d 1030 (1993); *Burnside v. Simpson Paper Co.*, 66 Wn. App. 510, 524-25, 832 P.2d 537 (1992), *aff'd*, 123 Wn.2d 93, 864 P.2d 937 (1994).

In a discharge case based on retaliation for age discrimination, RCW 49.60.210, a plaintiff must prove causation by showing that retaliation was a "substantial factor" motivat-

ing the adverse employment decision. *Allison*, at 95-96. There are no compelling reasons to extend the holding of *Allison* to actions based on RCW 49.60.180. *Sellsted; Hatfield ; Stork; Burnside.*

### EXCLUSION OF EVIDENCE

Contentions. In his cross appeal, Lords contends the trial court erred by excluding testimony by George Hibbs, a Northern employee. Mr. Hibbs was over 40, had a heart condition, and was terminated by Northern without an offer of demotion. He contends evidence of other discriminatory acts attributable to an employer is admissible in appropriate circumstances. *Burnside*, at 521.

Northern contends the trial court did not abuse its discretion in refusing to allow Mr. Hibbs to testify because the circumstances of his layoff were irrelevant. He did not hold the same position as Lords and his performance was evaluated by Lords, not Streeter. *Haskell v. Kaman Corp.*, 743 F.2d 113, 122 (2d Cir. 1984) (statistical sample too small to permit inference that age was determining factor in employer's decision). *See also Roberts*, at 893-94 (no evidence two former employees held comparable positions, worked under circumstances or had been discharged in a like manner). Northern also contends the testimony was improper under ER 404 as evidence of other wrongs and its probative value was outweighed by its potential prejudicial effect.

Discussion. Evidence of an employer's other discriminatory acts is admissible in appropriate circumstances. The trial court has broad discretion to determine when the circumstances are appropriate. *Burnside*, at 521. Here, the trial court excluded Mr. Hibbs' testimony primarily because he was an assistant manager and the issue was whether Northern discriminated in its selection of managers, not assistant managers.

When evidence is likely to confuse or mislead a jury, it may result in unfair prejudice. The trial court did not abuse its discretion when it determined the excluded evidence would be confusing or misleading.

We affirm the summary judgment dismissal of Lords' contract cause of action; affirm the age discrimination verdict; reverse the award of damages for negligent infliction of emotional distress; and affirm the handicap discrimination verdict, but remand for a new trial on econonmic damages. Since our decision impacts the trial court's award of attorney fees, we reverse and remand as to the attorney fee award. Lords' request for attorney fees on appeal attributable to his handicap discrimination claim is premature, given our decision to remand for a new trial on economic damages.

MUNSON and SCHULTHEIS, JJ., concur.

After modification, further reconsideration denied September 1, 1994.