[No. 23219-7-II.    Division Two.    October 8, 1999.]

ELEANOR HILL, *Respondent*, v. BCTI INCOME FUND-I, ET
AL., *Appellants*.

*Michael B. King* of *Lane Powell Spears Lubersky, L.L.P.*; and *Carolyn H. Ladd* of *Jackson Lewis Schnitzler & Krupman*, for appellants.

*Thomas Joseph West* of *Thompson, Krilich, LaPorte, West, & Lockner*, for respondent.

ARMSTRONG, J. — BCTI appeals a jury verdict and judgment in favor of former employee Eleanor Hill for age discrimination. Hill cross-appeals the dismissal of her disability discrimination claim. BCTI raises various issues, but one disposes of BCTI's appeal: Is the evidence sufficient to support the verdict where Hill offered evidence that BCTI's reason for discharging her was a pretext, but she did not present evidence that the actual reason was her age? We hold that it is not; accordingly, Hill failed to prove an age discrimination claim because she did not prove that she was terminated because of her age. We reverse the age discrimination judgment for Hill and affirm the dismissal of her disability claims.

## FACTS

BCTI trains students in office skills. In August 1993, 53-year-old Eleanor Hill was hired as a public relations representative in the Tacoma office. Hill's job was to recruit students; she became the top recruiter in her office. Hill was supervised by Randy Potter and Terry Clark.

In January 1994, Hill expressed an interest to Potter in transferring to BCTI's Southcenter site. According to Hill, Potter and Clark told her they would help her transfer. Hill moved her residence to Seattle in February 1994.

When she was hired, Hill was receiving social security disability payments because of chronic asthma. Hill testified that the commute from Seattle to Tacoma aggravated her asthma and caused her to miss work, and that she had told Potter and Clark that the commute was "bothering [her] from a physical standpoint."

On May 3, 1994, Hill was hospitalized for three days for an asthma attack. Hill testified that while hospitalized, she told both Potter and Clark that she had been hospitalized because of her asthma, that she thought it was caused by her commute, and that she was still thinking of transferring to the Southcenter office. According to Hill, both again offered to help her transfer. Hill missed a month of work in May because of the asthma attack.

While she was off work in May, Hill called Tammy Johnson, the public relations supervisor at the Southcenter office, and asked if there were any open positions. Johnson told her "[n]ot at this time" but to "[k]eep in touch." Hill testified that Johnson did not tell her that she should not be talking to Johnson.

Also in May, Hill and Johnson attended a three-day retreat in Port Townsend. Hill again talked to Johnson about a transfer to Southcenter. Hill testified that she told Johnson that if she went to Southcenter, she "would have to make $8 an hour," and "would have to have full time and benefits . . . ." But Hill denied discussing with Johnson her actual salary or benefits at the Tacoma office. According to Johnson, however, Hill told her that she presently made $8.00 an hour, that her current supervisors had promised her free computer courses, and that she worked full time. BCTI claimed to have an unwritten policy forbidding employees from discussing a transfer with anyone other than the employee's immediate supervisor. Hill testified that no one ever told her of the policy.

When Hill approached Johnson again on June 3 about a transfer, Johnson referred her to Potter. Several days later, Hill told Potter that she needed to transfer to Southcenter because of her asthma. On June 7, Potter met with Hill to ask about her conversations with Johnson during the retreat. Potter testified that Hill denied talking with Johnson about her current salary and benefits. Hill maintained that she had told Johnson only what she would have to receive in the future in order to transfer. On June 8 or 9, Potter and Clark both met with Hill. Hill testified

that they told her that they were "gonna have to let you go . . . [b]ecause you lied to us." They also told her that Johnson had said that Hill discussed her current salary and benefits at the retreat.

According to Potter, if Hill had "take[n] ownership" of the allegations that she had discussed her salary and benefits with Johnson, she would have been disciplined and given her transfer, rather than fired. Clark and Potter maintained that Hill was fired because she was "dishonest" in telling Johnson her salary and benefits and then in not "owning up" to that conversation. Both denied firing Hill because of her age or race.

Hill was replaced by a younger employee who handled the Tacoma area, an African-American male who was under 40, and by a white female who handled the Lacey area.

Hill sued, alleging that she was fired because of her race (African-American), her age, and her handicap (asthma). The disability claim alleged both disparate treatment (termination) and failure to accommodate (refusing to transfer). At the close of Hill's case, the trial court directed a verdict for BCTI on the handicap discrimination claim, ruling that Hill had not shown that the transfer was medically necessary because of her asthma.

The jury found that BCTI discriminated against Hill on the basis of her age and awarded her $119,000 in damages. The trial court awarded Hill her attorney's fees and costs. BCTI's motion for a judgment as a matter of law was denied.

## ANALYSIS
### A. Beyond Pretext

Under the *"McDonnell Douglas"*[1] burden-shifting scheme, the plaintiff in an age discrimination claim must produce evidence that (1) she was discharged from employ-

[1]*See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

ment; (2) at the time of discharge she was between 40 and 70 years of age; (3) she was doing satisfactory work; and (4) she was replaced by a younger person. *Carle v. McChord Credit Union*, 65 Wn. App. 93, 99, 827 P.2d 1070 (1992) (citing *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 362, 753 P.2d 517 (1988)). To avoid a directed verdict, the employer must then produce evidence of a nondiscriminatory reason for the discharge. *Carle*, 65 Wn. App. at 100 (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255, 101 S. Ct. 1089, 1094-95, 67 L. Ed. 2d 207 (1981)). If the employer does so, the burden shifts back to the employee to produce "rebuttal" evidence that the defendant's alleged reason for discharge is a "pretext for what, in fact, is a discriminatory purpose." *Grimwood*, 110 Wn.2d at 364. But if the employer produces evidence of a nondiscriminatory reason, the *McDonnell Douglas* framework of presumptions and burdens is no longer relevant. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510, 113 S. Ct. 2742, 2749, 125 L. Ed. 2d 407 (1993). Rather, "[t]he presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture." *Id.* at 510-11 (citing *Burdine*, 450 U.S. at 255).

■ The issue here is: does an employee meet the "pretext" stage by producing evidence only that the employer's reason is unworthy of belief? Or must the employee go further and produce evidence that the real reason was the discriminatory purpose? Tailored to this case, the question is whether Hill's verdict can stand when she produced evidence that BCTI did not fire her for dishonesty in handling the transfer, but she did not produce evidence that BCTI fired her because of her age.

The United States Supreme Court has created some confusion on this issue. In *St. Mary's*, the Supreme Court held that an employee who proves the employer's reason for the discharge is a pretext is not entitled to judgment as

a matter of law. Rather, the employee still has the ultimate "burden of persuasion" that discrimination occurred. *St. Mary's*, 509 U.S. at 511.

In reaching this decision, the Court uttered several apparently conflicting comments. First, the Court said that disbelief of the employer's proffered reasons will permit an inference of intentional discrimination, agreeing with the Court of Appeals that "[n]o additional proof of discrimination is required." *Id.* at 511 (citation omitted).

Yet later, the Court explained that *McDonnell Douglas* "does not say . . . that all the plaintiff need do is disprove the employer's asserted reason." *St. Mary's*, 509 U.S. at 517. Rather, under *McDonnell Douglas*, after the employer has provided its nondiscriminatory reason, " '[the employee] must be given a full . . . opportunity to demonstrate . . . that whatever the stated reasons for his rejection, the decision was in reality racially premised.' " *St. Mary's*, 509 U.S. at 517-18 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 n.18, 93 S. Ct. 1817, 1825 n.18, 36 L. Ed. 2d 668 (1973)). And the Court was confident that nothing in *McDonnell Douglas* would allow "us to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its action was not believable." *St. Mary's*, 509 U.S. at 514-15.

Faced with these puzzling pronouncements, the federal circuits have fallen into disarray. The Third,[2] Seventh,[3] Tenth,[4] and Eleventh[5] Circuits have held that evidence of pretext alone is enough to get to the jury. The First,[6]

---

[2]*Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061 (3d Cir. 1996).

[3]*Weisbrot v. Medical College of Wis.*, 79 F.3d 677 (7th Cir. 1996).

[4]*Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995).

[5]*Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997), *cert. denied*, 522 U.S. 1045, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998).

[6]*Woods v. Friction Materials, Inc.*, 30 F.3d 255 (1st Cir. 1994).

Second,[7] Fifth,[8] and the Eighth[9] Circuits have held that pretext alone is not sufficient; the employee must produce evidence that the real reason was discriminatory. The Ninth Circuit is perhaps undecided.[10]

We have previously discussed the "third facet" of *McDonnell Douglas*, an employee's burden to produce evidence of pretext, as if proof of pretext alone is sufficient. *Carle*, 65 Wn. App. at 101 (citations omitted). But *Carle* was decided before *St. Mary's*, and the issue of whether pretext evidence alone is sufficient to support a verdict for the employee was not raised.

In another case decided before *St. Mary's*, Division One of our court opined that Washington is a pretext-only state. *Sellsted v. Washington Mut. Sav. Bank*, 69 Wn. App. 852, 851 P.2d 716 (1993). The court stated that "[i]f the factfinder determines that the proffered reasons . . . are not credible, the presumption of an impermissible consideration . . . would permit the conclusion that age was a determining factor. . . ." *Id.* at 864 (citations omitted). But this language was not necessary to the decision reversing summary judgment for the employer because the employee, Sellsted, produced evidence of actual age discrimination. In responding to Washington Mutual's claim that he was discharged for difficulty in meeting new standards, Sellsted showed that other employees had difficulty but only older employees were placed on probation; and that within Sellsted's department, only older employees were "specially scrutinize[d]." *Id.* at 861.

The apparent conflict in *St. Mary's* may be resolved by

[7]*Fisher v. Vassar College*, 114 F.3d 1332 (2d Cir. 1997), *cert. denied*, 522 U.S. 1075, 118 S. Ct. 851, 139 L. Ed. 2d 752 (1998).

[8]*Rhodes v. Guiberson Oil Tools*, 75 F.3d 989 (5th Cir. 1996).

[9]*Ryther v. KARE 11*, 108 F.3d 832 (8th Cir. 1997), *cert. denied*, 521 U.S. 1119 (1997).

[10]*Compare Washington v. Garrett*, 10 F.3d 1421, 1433 (9th Cir. 1993) (pretext alone will create a question for the fact finder) *with Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (employee must prove that the true reason was unlawful sex discrimination).

the court's definition of "pretext." Daniel Grossman, *The Pretext Burden After St. Mary's Honor Center v. Hicks*, 24 COLO. LAW. 2349 (1995). The dissent had seized upon language from *Burdine*[11] that seemed to say that proof of pretext alone is sufficient. *St. Mary's*, 509 U.S. at 515. In discussing this, the majority answered that "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Id*. Thus, if pretext is defined to include both evidence of falsity and evidence of discrimination, the apparent conflict disappears. Support for this is found in *McDonnell Douglas* itself. In *McDonnell Douglas* the plaintiff-employee was an African-American active in the civil rights movement. The Court suggested as "[e]specially relevant to such a showing [pretext]" would be evidence that white employees who had engaged in the same misconduct as the plaintiff were treated differently, evidence of the plaintiff's treatment during previous employment, the employer's reaction to legitimate civil rights activities, and the employer's general policy and practice with "respect to minority employment." *McDonnell Douglas*, 411 U.S. at 804-05. In short, *McDonnell Douglas* mingled the concepts of pretext and discrimination and pointed to evidence of actual discrimination as proof of pretext.

Finally, in *Kastanis v. Educational Employees Credit Union*, 122 Wn.2d 483, 859 P.2d 26, 865 P.2d 507 (1993), decided shortly after *St. Mary's*, the Washington Supreme Court agreed that when the case goes to the jury, the *McDonnell Douglas* burden-shifting scheme " 'drops from the case.' " *Kastanis*, 122 Wn.2d at 494 (quoting *Burdine*, 450 U.S. at 255 n.10). And, "[w]hile the plaintiff must prove pretext under *McDonnell Douglas* to survive a motion for judgment as a matter of law, his or her burden at trial is to prove that the employer intentionally discriminated." *Id*. at 495.

If the *McDonnell Douglas* burden-shifting device drops

---

[11]*Burdine*, 450 U.S. at 253.

from the case, an employee is necessarily left with the burden of producing evidence of what is required by the statute—a discriminatory motive or purpose.

And we agree with the Second Circuit that proof of pretext is not the same as proof of the actual discriminatory motive. In *Fisher v. Vassar College*, 114 F.3d 1332 (2d Cir. 1997), *cert. denied*, 522 U.S. 1075, 118 S. Ct. 851, 139 L. Ed. 2d 752 (1998), the court explained the difference:

> But the label "pretext" does not answer the question: pretext for what? In some cases, an employer's proffered reason is a mask for unlawful discrimination. But discrimination does not lurk behind every inaccurate statement. Individual decision-makers may intentionally dissemble in order to hide a reason that is non-discriminatory but unbecoming or small-minded, such as back-scratching, log-rolling, horse-trading, institutional politics, envy, nepotism, spite, or personal hostility.

*Fisher*, 114 F.3d at 1337.

We are satisfied that under *St. Mary's* and *Kastanis*, the employee in an employment discrimination case must prove more than that the employer's stated reason for the employment decision is unworthy of belief. Rather, at trial the employee must produce evidence, either direct or circumstantial, of an actual discriminatory purpose.

Here, Hill presented evidence from which the jury could find pretext. But she offered no evidence that BCTI's real reason was age discrimination. And she offered no evidence of race or gender discrimination either. Thus, the jury had no reason based upon the evidence to choose age discrimination over race or gender or disability discrimination. More importantly, the jury had no reason to choose a discriminatory reason over an "unbecoming or small-minded" but nondiscriminatory reason. And, as in *Fisher*, BCTI may have had any number of "unbecoming or small-minded" reasons to dissemble in explaining Hill's termination, for example, her desire to move to another, perhaps competing, office. But such employment decisions are not actionable. Rather, an employer is liable only for employ-

ment decisions made for discriminatory reasons. RCW 49.60.180. Hill proved no discriminatory reason; the verdict must be set aside for insufficient evidence.

## B. Cross Appeal: Disability Discrimination Claim

Hill cross-appeals the dismissal of her disability discrimination claim.

> "A motion for a directed verdict may be granted only if it can be said, as a matter of law, that no evidence or reasonable inferences existed to sustain a verdict for the party opposing the motion. The evidence must be considered in the light most favorable to the nonmoving party."

*Gurno v. Town of LaConner*, 65 Wn. App. 218, 222-23, 828 P.2d 49 (1992) (quoting *Bender v. City of Seattle*, 99 Wn.2d 582, 587, 664 P.2d 492 (1983)).

■ It is unlawful to discharge someone because of a "sensory, mental, or physical disability." RCW 49.60.180(2). And an employer discriminates against a disabled employee when it takes "action against an employee because of the employee's condition, such as discharge, reassignment, or harassment or [when] the employer failed to take such steps as would be reasonably necessary to accommodate the employee's condition." *Doe v. Boeing Co.*, 121 Wn.2d 8, 17, 846 P.2d 531 (1993). An employer who discharges, reassigns, or harasses for a discriminatory reason faces a disparate treatment claim; an employer who fails to accommodate the employee's disability, faces an accommodation claim. *See Hume v. American Disposal Co.*, 124 Wn.2d 656, 880 P.2d 988 (1994); *Dean v. Municipality of Metro. Seattle*, 104 Wn.2d 627, 708 P.2d 393 (1985).

■ In a disparate treatment claim, the *McDonnell Douglas* burden-shifting scheme requires the employee to establish (1) the handicap; (2) satisfactory job performance; (3) replacement by a person outside the protected group; and (4) that her real or perceived handicap was the reason for her discharge. *Lords v. Northern Automotive Corp.*, 75 Wn. App. 589, 601, 881 P.2d 256 (1994).

■ In a reasonable accommodation claim, the plaintiff must show: (1) she had a handicap; (2) she was qualified to fill available positions; and (3) the employer failed to take affirmative measures to make those positions available to the employee. *Martini v. Boeing Co.*, 88 Wn. App. 442, 451, 945 P.2d 248 (1997) (citing *Fell v. Spokane Transit Auth.*, 128 Wn.2d 618, 633, 911 P.2d 1319 (1996) (quoting *Dean*, 104 Wn.2d at 639)), *aff'd and remanded*, 137 Wn.2d 357 (1999). Employers must reasonably accommodate the disability of an employee unless doing so "would cause undue hardship on the employer's business." *Martini*, 88 Wn. App. at 451 (citing *Doe*, 121 Wn.2d at 18 (citing WAC 162-22-080)). Thus, to achieve a reasonable accommodation, the employer and employee should share information to achieve the best match between the employee's capabilities and available positions. *Goodman v. Boeing Co.*, 127 Wn.2d 401, 408-09, 899 P.2d 1265 (1995).

■ Under either of these claims, Hill must prove that she is handicapped—a condition defined as " 'a sensory, mental, or physical handicap [that] is an abnormality and is a reason why the person having the condition did not get or keep the job in question[.]' " *Doe*, 121 Wn.2d at 14 (quoting WAC 162-22-040(1)(a)). Whether a person is "handicapped" is generally a question of fact. *Doe*, 121 Wn.2d at 15. But the employee must prove that accommodation is medically necessary. *Id.* at 18-19. And whether the evidence is sufficient to find medical necessity is a question of law. *Id.* at 19, 21-22.

BCTI argues that it had no duty to transfer Hill to Southcenter because Hill failed to prove the transfer was "medically necessary" to reasonably accommodate her. Hill's evidence on this point came from the following testimony of her physician:

A. Well, I wouldn't say that it's medically necessary. But if it's certainly a viable option it may be good just from a mental health standpoint if not also from the standpoint of helping reduce the exposure to airborne irritants.

Q. So from a medical standpoint it would be helpful

because then she wouldn't have the poor air quality to contend with on the commute to and from Seattle?

A. Yes, although I still wouldn't give it an absolute medical necessity indication.

This evidence falls short of proving medical necessity. "[T]he scope of an employer's duty to accommodate an employee's condition is limited to those steps reasonably necessary to enable the employee to perform his or her job." *Doe*, 121 Wn.2d at 18. Here, the physician did not testify that a transfer was necessary to enable Hill to perform her job. At most, the testimony demonstrated that a transfer *might* be good for Hill's mental health and that it would reduce her exposure to irritants. Missing was any evidence that a transfer to Southcenter was medically necessary to enable Hill to perform her job. *Id.*

Hill's disparate treatment claim also fails. To prove disparate treatment, the employee must establish an abnormal condition and an adverse employment decision *because* of the condition. WAC 162-22-040; *Doe*, 121 Wn.2d at 16.[12] As with her age discrimination claim, Hill produced no evidence of the actual reason she was terminated. At most she disputed BCTI's claim that she was terminated because of her "dishonesty" in handling the transfer. But to prove her disparate treatment claim, Hill had to offer evidence that BCTI terminated her because of her asthma. Absent such evidence, Hill failed to prove a "handicap" within the meaning of RCW 49.60.180. *Doe*, 121 Wn.2d at 16. The trial court did not err in dismissing Hill's disability discrimination claim.

Judgment and award of attorney's fees and costs for Hill are reversed. The dismissal of Hill's disability claims is affirmed.

---

[12]*Doe* noted the circular nature of the definition but declined to abandon it. *Doe*, 121 Wn.2d at 16.

BRIDGEWATER, C.J., and HUNT, J., concur.

Review granted at 140 Wn.2d 1005 (2000).