**Elijah L. TAYLOR, Plaintiff,**

v.

**FORD MOTOR COMPANY, Defendant.**

**Civ. A. No. 19015-3.**

United States District Court,
W. D. Missouri, W. D.

April 16, 1974.

---

Irving Achtenberg, Achtenberg, Sandler & Balkin, Kansas City, Mo., for plaintiff.

Lawrence R. Brown, Robert L. Driscoll, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., for defendant.

## FINAL JUDGMENT GRANTING DAMAGES FOR PLAINTIFF

WILLIAM H. BECKER, Chief Judge.

Heretofore an interlocutory judgment on the issue of liability was entered for plaintiff on May 21, 1973. Counsel thereafter have not agreed on a disposition of the remaining issues and request a final judgment.

Plaintiff first applied for a position at Ford Motor Company as a Tabulation Operator "B" on September 20, 1966. As a result of the discrimination against plaintiff, he failed to secure employment on or about September 20, 1966.

Except for the discrimination plaintiff, under company policy as applied in practice, would have been employed as a Tabulation Equipment Operator "B" on December 19, 1966, when a white male was employed as a result of racial discrimination.

At the time he applied for the position on September 20, 1966, plaintiff had completed a course of training in computer operation at his own expense to qualify him for the position he sought. He was then employed by defendant as an hourly employee on an assembly line. Plaintiff continued to work satisfactorily on the assembly line through March 7, 1968, at which time he voluntarily terminated his employment.

If plaintiff had been employed as a Tabulation Equipment Operator "B" on December 19, 1966, he would have received as compensation through March 7, 1968, a minimum sum of $7,617.57. As an hourly employee on the assembly line, plaintiff actually received compensation in the amount of $6,064.33.

Plaintiff therefore suffered a minimum loss, on and before March 7, 1968, in the amount of $1,553.24.

Plaintiff would have earned as a Tabulation Equipment Operator an additional minimum sum of $38,471.82 (without merit raises, promotions and fringe benefits) between March 8, 1968, and May 21, 1973. Further, plaintiff's computer skills would have been enhanced by his years of experience, making his services more valuable and qualifying him for new employment opportunities.

Plaintiff has actually earned during the period between May 7, 1968, and May 21, 1973, the sum of $20,849.59 which he admits should be treated as a sum to be deducted as mitigation of damages claimed in the amount of $38,471.82 for the same period. On this basis plaintiff claims additional compensatory damages from March 8, 1968, to May 21, 1973, in the amount of $22,402.-83.

In opposing this claim for additional compensatory damages, defendant relies on the stipulated fact that if plaintiff had remained in his employment on the assembly line, he would have earned $48,772.74 from March 8, 1968, through December 31, 1972. Defendant further contends that plaintiff has not been successful in his attempts to secure employment elsewhere as a computer operator.

In reply to defendant's contention that plaintiff failed to mitigate his damages by remaining in the employment of defendant on the assembly line until December 31, 1972, plaintiff contends that he was not legally required to remain on his distasteful assembly line job (sometimes injurious to his health) after he qualified himself in the preferred computer field at his own expense, and was wrongfully denied employment in the preferred position of Tabulation Equipment Operator.

■ The issue of the amount of damages to be mitigated is to be determined on equitable principles, rather than rigid mathematical calculations. The reduction of damages through mitigation principles is not based on facts showing a legal claim for relief in favor of the defendant, but is a result of determining that under the facts in mitigation, plaintiff's conceded cause of action does not entitle him to so large an award as the affirmative evidence on damages would otherwise justify. Motto v. United States, 360 F.2d 643, 175 Ct.Cl. 862 (1966); 25 Corpus Juris Secundum, Damages, § 96, 1000–1001; 22 Am.Jur. 2d § 200.

Thus, the maximum award of damages to the plaintiff for the period from March 8, 1968, to May 21, 1973, is $38,471.82. Plaintiff concedes that there should be some mitigation and urges that it be limited to plaintiff's actual earnings of $20,849.85. Defendant on the other hand urges mitigation of all damages for this period because plaintiff could have earned more than the damages by remaining on the assembly line. Application of defendant's contentions would not advance the purposes of Title VII of the Civil Rights Act of 1964, nor would it be equitable. Application of defendant's contentions would in this and many cases, permit employers to deny, on racial grounds, opportunities for laborers in difficult but remunerative physical jobs to advance into positions requiring less physical and more mental operations with greater future possibilities. An equitable principle to mitigate all plaintiff's damages because plaintiff desired to rise upward in desirable employment would permit defendant to profit inequitably by its own wrong.

This conclusion is reached in light of the denial of plaintiff's prayer for relief for declaratory judgment, therein declaring that defendant was obligated to hire plaintiff as a Tabulation Equipment Operator "B" ahead of all other applicants. The evidence shows that defendant has changed its 1968 practices to provide the opportunity that plaintiff was wrongfully denied. Further, there is no showing that plaintiff, as of 1973, possessed the skills and qualifications he presented in late 1966 and early 1967.

The purpose of Title VII of the Civil Rights Act of 1964 and the interests of the defendant will be better served by a compensatory award of proper damages and attorney fees, with mitigation only of compensation actually received. This type of award is calculated to terminate the discriminatory practice and make its victim whole. Bowes v. Colgate, 416 F.2d 711, 721 (7th Cir. 1969). Therefore, in addition to attorney fees, plaintiff's compensatory damages and interest after mitigation are calculated at $22,891.25 on May 21, 1973, as follows:

| Time Period | Maximum Damages | Mitigation | Net Damages |
|---|---|---|---|
| 12–16–66 to 3–7–68 | $7,617.57 | $6,064.33 | $1,553.24 |
| 3–8–68 to 5–21–73 | $38,471.82 | $17,622.23 | $20,849.59 |
| Total Net Damages | | | $22,402.83 |
| Interest on $1,553.24 at 6% from 3–7–68 to 5–21–73 (62.5 months at .5% per month) | | | 488.42 |
| Total Damages May 21, 1973 | | | $22,891.25 |

### Attorney Fees

This is an action in which attorney fees should be allowed to make plaintiff whole. Counsel for plaintiff has displayed unusual industry and skill and he has invested a great amount of valuable time in a case in which the primary practical source of expected compensation depended on success in securing a judgment. Applying the usual standards and reasonable similar charges to the demonstrated time, in court and out of court, from daily time records, it is found that a reasonable attorney fee for plaintiff's counsel for services rendered up to and including May 21, 1973, is at least $15,000.[1]

For the foregoing reasons, it is therefore

Ordered and adjudged that the plaintiff have and recover, of and from the defendant, compensatory damages in the amount of $22,891.25, plus interest at 6% from May 21, 1973. It is further

Ordered and adjudged that the plaintiff further have and recover, of and from the defendant, attorney fees in the amount of $15,000, plus interest at the rate of 6% from May 21, 1973, to be paid directly to plaintiff's counsel Irving Achtenberg, who may alone give full release and acknowledge satisfaction thereof of record. It is further

Ordered and adjudged that the prayer of plaintiff for declaratory relief be, and it is hereby, denied.

All costs are taxed against the defendant.

---

1. In a Memorandum to Counsel filed on April 10, 1974, counsel were requested to promptly advise the Court in writing whether either party desired to offer any further evidence on the amount of attorney fees. By individual letters dated April 15, 1974, counsel advised the Court that no additional evidence was to be offered.