[No. 37746-9-I.    Division One.    October 13, 1997.]

Luc Martini, *Respondent*, v. The Boeing Co.,
*Appellant*.

*Russell L. Perisho* and *Orna A. Edgar* of *Perkins Coie,* for appellant.

*John P. Sheridan* of *Law Office of John P. Sheridan, P.S.*; *Jeannie Gorman*; and *Stephen K. Festor,* for respondent.

Cox, J. — A jury returned a verdict in favor of Luc Martini for disability discrimination by his former employer, The Boeing Company. The trial court entered judgment on the verdict and awarded Martini statutory attorney fees. The court also imposed monetary sanctions on both parties. Both sides appeal.

There was substantial evidence to support the verdict. Moreover, the trial court did not abuse its discretion by

imposing discovery sanctions on Boeing and Martini and in making the evidentiary rulings that Boeing challenges on appeal. But the trial court did err by reducing, without adequate explanation for our review, the amount of attorney fees awarded to Martini. It also erred by refusing to subrogate Boeing to future workers' compensation pension benefits that Martini receives. Therefore, we affirm in part, reverse in part, and vacate and remand with directions.

The Boeing Company hired Martini in July 1978. He later worked as a training instructor. In that capacity, he developed curricula, methods, and procedures for Boeing customers using AWACS military aircraft. He also taught classes and provided training for these customers.

In January 1988, Martini fell asleep at the wheel of his car and drove off the road. Dr. Pascualy, a sleep disorder specialist, diagnosed him with sleep apnea. Dr. Pascualy also diagnosed Martini as suffering from chronic depression, heart disease, and obesity. Martini's supervisor at the time, Garnett Neely, commented on Martini's apparent fatigue at work. Martini showed Neely a letter and other materials from Dr. Pascualy indicating that Martini had been diagnosed with sleep apnea and describing the problem. Martini discussed with Neely the effects of sleep apnea but did not ask him for any accommodation at that time.

Dr. Pascualy prescribed a continuous positive air pressure (CPAP) machine to remedy Martini's sleep apnea. This machine prevents the breathing cessation during sleep that is characteristic of sleep apnea.

In February 1989, Martini drove off the road again when he fell asleep. He reported this incident and the prior one to Neely because they made him late to work. In 1989, Martini made a number of suggestions to Neely regarding accommodations that would help him manage his sleep apnea. These included relocation to a facility closer to his home and flexibility in his starting time.

In 1989, Martini looked into Boeing's cardiac rehabilita-

tion exercise program in order to lose weight. He was evaluated by Dr. George Gey, a Boeing doctor, as part of the program. Dr. Gey gave Martini a treadmill test as part of the evaluation. After the treadmill test, Martini was too tired to return to work because he had had what he described to Dr. Gey as a "bad apnea night" the night before the test.

In 1989, Martini went to see Linda Nicol, a Boeing Employee Assistance Program (EAP) counselor. He informed Nicol that with his work schedule and commute he was unable to get enough sleep. Nicol indicated that she felt Martini should receive further evaluation and referred him to a 30-day psychiatric treatment program. Martini did not attend that program because he was afraid his work would accumulate while he was gone. Nicol did not follow up with him.

In February 1990, Martini saw another EAP counselor, Paul Higuchi. Higuchi found that Martini was anxious and depressed. He did not investigate further.

That same month, Dr. Pascualy referred Martini to Dr. Jack Conway, a psychiatrist. Dr. Conway diagnosed Martini with major depression. According to Dr. Conway, Martini's perception that his work environment was hostile and that his co-workers were unsympathetic regarding his sleep apnea aggravated his depression.

Martini was scheduled to conduct AWACS training for the Royal Air Force in England in June 1990. He was concerned about going on that trip because he was afraid that the long travel time, which was to begin in the evening and extend well into the next day, would exacerbate his sleep apnea. He therefore requested to take vacation time instead of going on the trip. As a result of his vacation request, Martini met with his supervisor, Neely, and another Boeing official.

As a result of that meeting and one other, Martini agreed to go to England to conduct the scheduled meeting. He went on the basis of his understanding that, in his absence, Boeing would transfer him to a new position that would accommodate his health concerns.

When Martini returned from England on July 9, he inquired about a new position. Clay Crosbie, the personnel manager, replied that he had not yet found Martini a new job. Crosbie stated that he had been busy relocating Boeing personnel who were involved with the Gulf War and was unable to address Martini's request at that time. When Martini then spoke to his new supervisor, John Wiese, Wiese said that Martini should begin preparing to conduct AWACS training for customers in France. That training was scheduled to begin several months later.

On July 10, 1990, the day following his discussions with Crosbie and Wiese, Martini submitted a letter stating his intention to use his remaining leave and to terminate his employment at Boeing on August 20, 1990. Martini ended his employment with Boeing on August 21, 1990. After leaving Boeing, Martini tried to find work. He was unsuccessful.

Martini commenced this action against Boeing on July 9, 1993. The case was tried to a jury.

At trial, Dr. Pascualy testified that in May 1989 Martini's sleep apnea had improved substantially since the initial diagnosis in 1988, but that this condition continued to exist as of the time of trial. The doctor also testified that he believed that Martini's depression probably started as far back as 1986 and was still a problem in early 1990. Thus, the doctor referred Martini to Dr. Conway for treatment. Dr. Pascualy further testified that in 1991, he wrote a letter to Boeing's insurer expressing his opinion that Martini's sleep apnea did not render him unable to engage in gainful employment.

Dr. Conway, a psychiatrist, also testified at trial. He treated Martini from February through July 1990. He again saw Martini in 1991. He confirmed that he diagnosed Martini with major depression during the time of treatment and that the depression was related to Martini's job. People at the job were unsympathetic to Martini's sleep apnea or its impacts on Martini. Dr. Conway identified several accommodations that were appropriate for treat-

ment of the depression. They included a change of jobsite for Martini, no overtime work, temporary leave, and use of the CPAP machine by Martini at work. Dr. Conway also noted that Boeing had never contacted him about accommodating Martini's depression.

Dr. Harvey Ries, a psychiatrist, also testified at trial. He saw Martini in 1991. Dr. Ries diagnosed him with major depressive illness and concluded that Martini was unable to work at that time. He also testified that Martini lost his ability to work sometime in the summer of 1990. Dr. Ries stated that Martini's illness was caused by a vicious cycle of job-related stress and medical problems.

Martini testified that in early 1990, his work environment deteriorated. Neely, his supervisor, complained that Martini was using too much sick leave and reporting to work late.

By special verdict, the jury found that Boeing had discriminated against Martini on and after July 9, 1990, and that it engaged in a closely related series of discriminatory acts against him commencing before and continuing beyond that date. It assessed damages against Boeing for lost earnings ($205,356); lost future earnings ($480,932); pain, suffering, and emotional distress ($75,000); and past and future medical expenses ($15,000). The court entered judgment on that verdict. Boeing made several posttrial motions after the entry of judgment, all of which the trial court denied. These included a motion for judgment as a matter of law, an alternative motion for a new trial or remittitur, and a motion for an order subrogating Boeing to Martini's future recovery of workers' compensation benefits. The trial court awarded attorney fees to Martini, but in an amount substantially less than what Martini requested and well below the amount unchallenged by Boeing.

Boeing appeals the order on posttrial motions. It argues that the jury's verdict was not supported by substantial evidence. It also contests jury instructions regarding damages for the period following Martini's resignation from

Boeing. Boeing further contends that the court erroneously admitted evidence regarding disability-related harassment Martini experienced at Boeing. Boeing finally argues that the trial court should have subrogated it to Martini's Industrial Insurance Act (IIA) pension benefits because of the award of front pay.

Martini cross-appeals the trial court's attorney fees award and its decision regarding sanctions. He argues that the trial court failed to give reasons for its reduction in Martini's attorney fees and erred by awarding insufficient discovery sanctions against Boeing and by imposing sanctions against Martini

## I

### Sufficiency of Evidence

██ Boeing first contends that the trial court erred in denying the motion for judgment as a matter of law because there is insufficient evidence in the record to support the jury's verdict.[1] We apply the same standard as the trial court when reviewing the trial court's decision to deny a motion for judgment as a matter of law.[2]

A directed verdict or judgment [as a matter of law] is appropriate if, when viewing the material evidence most favorable to the nonmoving party, the court can say, as a matter of law, that there is no substantial evidence or reasonable inferences to sustain a verdict for the nonmoving party. . . .

The inquiry on appeal is limited to whether the evidence presented was sufficient to sustain the jury's verdict. Denial of a motion for directed verdict or judgment [as a matter of

---

[1] CR 50(a)(1) provides that the court may grant a motion for judgment as a matter of law where "there is no legally sufficient evidentiary basis for a reasonable jury to find or have found for that party with respect to that issue . . . ." CR 50(a)(2) provides that a party may make such a motion in accordance with CR 50(b), which states that "[n]ot later than 10 days after the entry of judgment . . . a party may move for judgment as a matter of law. . . . If a verdict was returned, the court may, in disposing of the motion for judgment as a matter of law, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law."

[2] *Wright v. Engum*, 124 Wn.2d 343, 356, 878 P.2d 1198 (1994).

law] is inappropriate only when it is clear that the evidence and reasonable inferences are insufficient to support the jury's verdict.[3]

Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premise.[4]

██ Washington's Law Against Discrimination (LAD), RCW 49.60, recognizes a right to be free from discrimination because of a disability.[5] A person who is injured by a violation of this right has a civil cause of action to recover the actual damages sustained.[6] To make a prima facie case of handicap discrimination an employee must prove the following: (1) that he or she is handicapped; (2) that he or she was qualified to fill vacant positions; and (3) that the employer failed to take affirmative measures to make known such job opportunities to the employee and to determine whether the employee was in fact qualified for those positions.[7] Employers have an affirmative obligation to reasonably accommodate the disability of an employee unless the employer can demonstrate that the accommodation would cause undue hardship on the employer's business.[8]

Boeing argues that there was insufficient evidence to show that any discrimination occurred within the limitations period, that Boeing did reasonably accommodate Martini's disability, and alternatively, that Martini was

---

[3]*Wright*, 124 Wn.2d at 356 (quoting *Hizey v. Carpenter*, 119 Wn.2d 251, 271-72, 830 P.2d 646 (1992) (quoting *Industrial Indem. Co. of the N.W., Inc. v. Kallevig*, 114 Wn.2d 907, 915-16, 792 P.2d 520, 7 A.L.R.5TH 1014 (1990))).

[4]*In re Marriage of Hall*, 103 Wn.2d 236, 246, 692 P.2d 175 (1984) (citing *Smith v. Shannon*, 100 Wn.2d 26, 666 P.2d 351 (1983); *Ridgeview Props. v. Starbuck*, 96 Wn.2d 716, 638 P.2d 1231 (1982)).

[5]RCW 49.60.030(1).

[6]RCW 49.60.030(2).

[7]*Fell v. Spokane Transit Auth.*, 128 Wn.2d 618, 633, 911 P.2d 1319 (1996) (quoting *Dean v. Municipality of Metro. Seattle*, 104 Wn.2d 627, 639, 708 P.2d 393 (1985)).

[8]*Doe v. Boeing Co.*, 121 Wn.2d 8, 18, 846 P.2d 531 (1993) (citing WAC 162-22--080).

not entitled to any accommodation. We disagree with each of these arguments.

■ The three-year statute of limitations of RCW 4.16.080(2) applies to actions under RCW 49.60.[9] Martini commenced this action on July 9, 1993. Thus, Martini was required to prove that Boeing discriminated against him on or after July 9, 1990.

■ In *Goodman*, we held that an employee may recover damages for discrimination that begins during the period barred by the statute of limitations but that continues into the three-year limitations period.[10] Here, the question is whether the record contains substantial evidence to show that Boeing's allegedly discriminatory acts were closely enough related to constitute a continuing violation that started before and continued into the limitations period that began on July 9, 1990.[11]

Ignoring our holding in *Goodman*, Boeing argues that events that occurred before July 9, 1990, the beginning of the limitations period, cannot be the basis of liability. It contends that *Goodman* holds that a claim of discrimination is time-barred unless the plaintiff can prove that a discriminatory act occurred within the limitations period. Thus, Boeing focuses its argument exclusively on events after July 9, 1990.

In *Goodman*, we concluded that the evidence there showed a continuing series of acts of discrimination that included acts before the limitations period as well as after it. Damages were accordingly awarded for all acts because they constituted a continuing violation. The same is true here.

During closing argument, Martini identified for the jury the acts that constituted a continuing violation. They included Boeing's alleged lack of accommodation of

---

[9]*Goodman v. Boeing Co.*, 75 Wn. App. 60, 77, 877 P.2d 703 (1994), *aff'd*, 127 Wn.2d 401, 899 P.2d 1265 (1995).

[10]*Goodman*, 75 Wn. App. at 77.

[11]*Goodman*, 75 Wn. App. at 77-78.

Martini's depression and sleep apnea problems by failing to transfer him to another job and instead sending him to England for training in the summer of 1990. Martini further argued a lack of accommodation by Boeing's failure to find him a job suited to his needs while he was in England that summer. He also argued there was a failure to accommodate by failing to meet with him regarding a new job and instead expecting him to go to France for further work after he returned from England. These arguments were all based on testimony and other evidence presented during trial. On the basis of this evidence, a jury could find that there was a continuing violation by Boeing of the duty to accommodate that began prior to July 9, 1990, and continued after that date.

■ Boeing contends that its duty to accommodate Martini's disability ended when he submitted his letter of resignation on July 10, 1990. In *Molloy v. City of Bellevue*,[12] we held that the City did not have a continuing duty to notify a disabled police officer of job openings after the officer rejected a job offer by the police department and unequivocally indicated his intent to move to California to obtain teaching credentials. Thus, if there is sufficient evidence in the record to show that Martini's July 10, 1990 letter was an unequivocal immediate termination of employment and discontinuance of his pursuit of alternative jobs at Boeing, we should confine our inquiry to the period before the July 10, 1990 letter.

■ As a preliminary matter, we note that the trial court, without exception by Boeing, gave the jury instruction 9. That instruction provides:

> You are instructed that the plaintiff *voluntarily resigned his job at Boeing on August 21, 1990, and that plaintiff's res-*

---

[12]71 Wn. App. 382, 391-92, 859 P.2d 613 (1993), *review denied*, 123 Wn.2d 1024 (1994).

*ignation terminated any duty of the defendant to accom-[m]odate plaintiff after that date.*[13]

By failing to object to instruction 9 below and by failing to assign error to it on appeal, Boeing has waived its argument that its duty to accommodate Martini ended prior to August 21, 1990.[14]

In any event, there is evidence in the record to support the giving of instruction 9. John Wiese, Martini's supervisor, testified that he believed that Martini would use his accrued vacation time to reconsider his position on quitting. In addition, Wiese stated that he expected Martini "to come back from vacation and at least discuss with me what he planned to do." The jury could have reasonably determined that it should consider events after July 10, 1990, in its deliberations.

We thus reject Boeing's arguments that would confine our inquiry to the one-day period between July 9 and July 10, 1990. Having determined that the relevant period that we must examine for purposes of this part of our review started prior to July 9 and ended on August 21, 1990, we turn to the remaining arguments.

Boeing contends that Martini was required to prove that his disability interfered with his job performance and that he failed to do so. It relies primarily on *Doe v. Boeing*.[15] There, our Supreme Court stated that "[w]e hold that the scope of an employer's duty to accommodate an employee's condition is limited to those steps reasonably necessary to enable the employee to perform his or her job."[16] To the extent that Boeing advocates a narrow reading of this rule, we reject its argument.

In *Goodman v. Boeing*, there was no allegation that Goodman's performance was unsatisfactory. But her work

---

[13](Emphasis added.)

[14]*See State v. Scott*, 110 Wn.2d 682, 685-86, 757 P.2d 492 (1988).

[15]121 Wn.2d at 8.

[16]*Doe*, 121 Wn.2d at 18.

exacerbated her medical condition to the point where she was required to have surgery and her doctor advised her that she could perform only work requiring minimal use of her hands.[17] We held that Goodman's situation was distinguishable from the *Doe* plaintiffs because there was evidence that Goodman's work seriously affected her health.[18] In view of the mandate of liberal construction set forth in RCW 49.60.020, we believe the rationale of *Goodman* applies equally to this case.

The record contains substantial evidence to support a finding that the conditions at Martini's job did exacerbate his health problems and affect his performance. Specifically, Dr. Conway testified at trial that he diagnosed Martini with major depression related to his job. Dr. Conway further testified that he believed that the removal of Martini's job-related stress would have improved the likelihood of his recovery. Dr. Pascualy, one of Martini's other treating physicians, testified that conditions at Boeing leading to Martini's termination "had a significant impact on his health and his deterioration."

Boeing cites *Michelsen v. Boeing Co.*[19] in support of its argument. *Michelsen* is distinguishable. In that case, the plaintiff was injured at work. After consultation with physicians and a vocational counselor, Boeing found the plaintiff a job that accommodated his injury.[20] The plaintiff ceased going to work and was subsequently terminated.[21] Michelsen's physicians told him there was nothing wrong with him, and that he should return to work.[22] Here, there is evidence in the record that Martini was diagnosed with depression and that his job impacted this condition.

---

[17] *Goodman,* 75 Wn. App. at 66.

[18] *Goodman,* 75 Wn. App. at 75.

[19] 63 Wn. App. 917, 826 P.2d 214 (1991).

[20] 63 Wn. App. at 919.

[21] 63 Wn. App. at 919.

[22] 63 Wn. App. at 919.

Boeing also cites *Lords v. Northern Automotive Corp.*[23] Boeing states that the plaintiff in *Lords* failed to present evidence that his abnormal conditions (a heart condition and diabetes) impeded his job performance. But that court held that there was sufficient evidence for the jury to find that the employer perceived the employee's heart condition as a handicap.[24] The applicable portion of the WAC (162--22-040(1)(b)) provides that a condition is a handicap if it is either medically cognizable *or* is perceived to exist, and Lords' heart condition qualified under either provision. This case is not helpful either to Boeing's argument or our analysis.

Boeing next argues that an employer does not have a legal duty to inquire into the nature and extent of a disability. Rather, it argues that the employee bears the burden of notifying the employer of the disability and the fact that the disability limits the employee's ability to do his or her job. It contends that Boeing provided Martini all medically necessary accommodations for the disabilities about which the company knew.

Martini responds that once Boeing became aware that he had a disability, it had a duty to inquire further into the nature of the disability and to take positive action to make accommodations. He claims that Boeing did not inquire into the nature of his disabilities, did not implement accommodations Martini requested, and treated Martini like any other employee in assisting him to find a new job.

■ The state Supreme Court recently addressed the question of when an employer's duty to accommodate an employee is triggered in *Goodman v. Boeing Co.*[25] There, the court stated that this duty arises when the employer becomes aware of the employee's disability and limita-

---

[23]75 Wn. App. 589, 881 P.2d 256 (1994).

[24]75 Wn. App. at 602.

[25]127 Wn.2d 401, 899 P.2d 1265 (1995).

tions.[26] Once the employee has met his or her burden of providing the employer with notice of the disability, the employer is required to take " 'positive steps' " to accommodate the disability.[27] The employee is not required to inform the employer of "the full nature and extent of the disability."[28]

With respect to his depression, Martini was interviewed by Nicol and Higuchi at Boeing's EAP. Nicol testified that she did not gain enough information during her interview with Martini to determine if he suffered from major depression. But she knew that he suffered from symptoms of depression and advised him to enter into an intensive treatment program requiring him to take time off work. Higuchi concluded that Martini had some level of depression and anxiety and knew he was about to begin treatment by Dr. Conway. Higuchi further testified that he referred Martini for training to assist him in dealing with his work situation "until maybe something did change, a transfer did occur . . . ." This was sufficient notice to Boeing to trigger a duty to investigate further into the nature and impact of Martini's depression disability.

Martini also testified that he discussed his sleep apnea with Neely in some detail. After leaving work following his treadmill test, Martini called Dr. Gey and informed him that he left work because of his apnea. There is substantial evidence in this record on which the jury could base its finding that Boeing had sufficient notice of Martini's disability to have triggered Boeing's duty to take positive steps to accommodate the disability.

■ In any event, the court gave a jury instruction stating that Martini was required to prove that "Boeing knew or should have known of [his] physical or mental handi-

---

[26]See Goodman, 127 Wn.2d at 408 (citing Holland v. Boeing Co., 90 Wn.2d 384, 391, 583 P.2d 621 (1978)). See also Stevens v. City of Centralia, 86 Wn. App. 145, 156, 936 P.2d 1141 (1997).

[27]Goodman, 127 Wn.2d at 408.

[28]Goodman, 127 Wn.2d at 408.

cap.''[29] Boeing's knowledge of the disability was thus a jury question. Boeing has no basis to complain that an improper standard was applied to it in this case. There was sufficient evidence in the record for the jury to find that Boeing either knew or had reason to know of Martini's depression disability.

Boeing cites *Taylor v. Principal Fin. Group, Inc.*,[30] to support its argument. *Taylor* is distinguishable. There, the employee in no way related his psychiatric disorders to his job when he told his employer about his condition. In contrast, Higuchi of Boeing's EAP was aware that Martini's depression was related to his work.

Boeing further argues that, in any event, it did provide reasonable accommodation for Martini's disabilities. It contends that an employer is required to provide only medically necessary accommodations. We agree with that statement of the principle of law, but disagree with Boeing's assertion that it complied with that principle in this case. In *Doe*, the Supreme Court observed that Doe, who was undergoing sex change surgery, "unilaterally" determined that she needed to dress as a woman at work in order to qualify for such surgery. The court upheld the trial court's decision that Boeing did not discriminate against Doe because the requested accommodation was not medically necessary.[31]

Here, there is substantial evidence in the record to sup-

[29]Instruction 10 states, in relevant part:

"Washington's law against discrimination prohibits employers from discriminating against employees based upon disability. A disability is an abnormal sensory, mental, or physical condition upon which discrimination is based. The law imposes a duty upon employers to make reasonable accommodations to the known physical and mental limitations of handicapped employees.

"To prove that Boeing discriminated against Mr. Martini because of handicap, Mr. Martini has the burden of proving all of the following:

"1) That he had a physical or mental handicap;

"2) That Boeing knew or should have known of that physical or mental handicap[.]"

[30]93 F.3d 155 (5th Cir.), *cert. denied*, 519 U.S. 1029 (1996).

[31]*Doe*, 121 Wn.2d at 18-19.

port a finding that Boeing failed to provide reasonable accommodation to Martini with respect to his depression. Dr. Conway testified that a shorter commute, flextime with perhaps some half-time days, and a limitation on overtime would have ameliorated Martini's depression. Martini testified that his supervisor was unwilling to grant him flextime beyond moving up his starting time. Martini also testified that his supervisor objected to his taking partial sick days.

Further, the Boeing EAP counselors, Nicol and Higuchi, failed to follow up with Martini after they interviewed him. Knowing that he was depressed and that his depression was related to his job, they did not take the positive steps required by the LAD to accommodate his depression.[32]

Finally, after convincing Martini to go to England to conduct training and assuring him that the company would seek to transfer him, the company did not fulfill its promise. Upon Martini's return from England, Boeing did not begin to assist him in finding another position within the company. Rather, Crosbie deferred his request for a new job. Wiese, his supervisor, told him to prepare to conduct further training in France. Boeing had notice that Martini was depressed, but no one within the company sought any information as to how to accommodate this disability.

On this record, a jury could find that there was an actionable failure to accommodate Martini's disability of depression.

Because we conclude that there is substantial evidence to support the verdict based on the failure to accommodate Martini's depression, we need not reach the question of whether there was also substantial evidence to show Boeing failed to accommodate Martini's sleep apnea disability.

---

[32]*Dean,* 104 Wn.2d at 638-39.

## II

### Instructions

Boeing contends that the trial court erred by giving damage instructions that allowed the jury to award Martini damages for the period following his resignation. The trial court gave instruction 20, which states:

> You must determine whether or not Boeing's actions caused Mr. Martini to lose compensation (including salary and benefits) of a certain dollar amount between the time he stopped working for Boeing to the present. You must also determine whether or not Boeing's actions caused Mr. Martini to lose compensation in the future. Damages for compensation lost prior to trial are called "back pay" or "past earnings," and damages for compensation lost after trial are called "front pay" or "lost future earnings."

> "Back pay" or "past earnings" are calculated from the date Mr. Martini stopped working to the date of your verdict. "Front pay" or "lost future earnings" may be awarded from the date of your verdict for a reasonably certain period of time that does not exceed the likely duration of employment. It is the employee['s] burden to prove "front pay" or "lost future earnings" for a reasonably certain period of time.

> You must decide what amount of back and front pay, if any, Mr. Martini is entitled to under the evidence in this case.

### A

### Constructive Discharge Rule

Boeing argues that we should apply to this discrimination lawsuit the rule that a party may not recover damages incurred following the party's resignation unless the party was constructively discharged. We decline to accept Boeing's invitation to apply such a rule to this case.

■ The LAD states in relevant part that "[a]ny person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, *or to recover the actual damages sustained by the person . . . .*"[33] The statute is to be liberally construed to fulfill its purpose.[34] In general, statutory protection against discrimination should be liberally construed and its exceptions narrowly confined.[35]

■ Boeing relies on the doctrine of constructive discharge, which was described by our Supreme Court in *Binkley v. City of Tacoma.*[36] The doctrine requires a showing that an employer deliberately made an employee's working conditions intolerable, thus forcing the employee to resign.[37] Generally, where there has been no showing of constructive discharge, the courts of this state have disallowed recovery of back pay for the period between an employee's resignation and the court's final decision.[38]

While *Binkley* states the general rule, it is not a disability discrimination case. It did not involve the policies articulated in the statute that we partially quoted above. Thus, it does not answer the questions before us.

Boeing does not cite, and we have not found, any Washington case addressing the issue of whether a finding of constructive discharge should be required for a LAD plaintiff to recover for damages after the date of resignation. Boeing contends that *Glasgow v. Georgia-Pacific Corp.*[39] requires that we hold that the lack of constructive discharge here bars damages after Martini resigned. We

---

[33]RCW 49.60.030(2) (emphasis added).

[34]RCW 49.60.020.

[35]*Phillips v. City of Seattle*, 111 Wn.2d 903, 908, 766 P.2d 1099 (1989).

[36]114 Wn.2d 373, 787 P.2d 1366 (1990).

[37]*Binkley*, 114 Wn.2d at 388.

[38]*Binkley*, 114 Wn.2d at 389-90.

[39]103 Wn.2d 401, 693 P.2d 708 (1985).

disagree. That discrimination case does not discuss back pay or mention a date of resignation in its discussion. Thus, *Glasgow* is not helpful in deciding here whether the absence of constructive discharge bars recovery of damages after resignation.

Each side relies heavily on *Thorne v. City of El Segundo*[40] to advance arguments respecting the application of constructive discharge to this case. There, Thorne worked for the City of El Segundo Police Department as a clerk-typist until she resigned in November 1978. She brought a Title VII claim against the City, claiming it had discriminated against her by rejecting her application in January 1978 for a position as an officer on the police force. The department had disqualified her from consideration, notwithstanding her rank as second-highest among the applicants in the oral and written tests and her satisfactory completion of physical agility tests.

The Ninth Circuit Court of Appeals held that the City had discriminated against Thorne on the basis of sex, violating Title VII of the Civil Rights Act of 1964. The court remanded the case to the district court to enter judgment in favor of Thorne on the claim and to determine damages. On the second appeal, which is the subject of this reported decision, the court of appeals considered the district court's decision on damages and other issues.

The court concluded that the doctrine of constructive discharge did not bar the award of damages after Thorne's resignation as a clerk-typist. In reaching that conclusion, the court observed that the doctrine was limited to promotion and demotion cases. Furthermore, even in such cases the doctrine is not applied rotely.[41] Noting that the application of the doctrine made sense in promotion cases,

---

[40] 802 F.2d 1131 (9th Cir. 1986).

[41] *Thorne*, 802 F.2d at 1136 (citing *Wells v. North Carolina Bd. of Alcoholic Control,* 714 F.2d 340 (4th Cir. 1983) (court held that plaintiff was entitled to back pay for time after his resignation, but that he was under a duty to mitigate), *cert. denied,* 464 U.S. 1044 (1984); *Helbling v. Unclaimed Salvage & Freight Co.,* 489 F. Supp. 956 (E.D. Pa. 1980) (court awarded back pay for time after plaintiff resigned minus plaintiff's income during that time and the amount

where an employee should be encouraged to remain to work with supervisors within the existing job setting and not quit at the first sign of discrimination, the court drew a distinction in the case where someone goes to a new job position. There, the application of the doctrine makes no sense. The court held that the more relevant question under the facts of the case is whether the employee who quits mitigates his or her damages by continuing to seek employment. If the employee does that, then there should be no restriction of a back pay award, notwithstanding the fact that the employee quit and there was no constructive discharge.

Here, the court found that there was no constructive discharge of Martini by Boeing. He quit. Clearly, this is not a promotion or demotion case. Martini sought a move to another job to address his disability concerns. Moreover, Boeing does not argue that Martini failed to mitigate his damages. The record shows he looked for work after he quit. Thus, under *Thorne* and similar cases, constructive discharge does not apply to bar a back pay award in this case. We believe this interpretation of the LAD is most consistent with the principles of that act and the case authority construing the similar federal act.

Boeing contends that applying the constructive discharge rule in this situation would further the policy of encouraging employees to attempt to resolve their problems within the employment context. It cites federal cases where the courts have relied upon such reasoning to deny the damages at issue here.[42] But, as the court in *Thorne*

plaintiff could have earned if she sought suitable positions); *Di Salvo v. Chamber of Commerce,* 568 F.2d 593 (8th Cir. 1978) (plaintiff was entitled to post-resignation back pay where the evidence supported a finding that she left in order to find another job); *Taylor v. Ford Motor Co.,* 392 F. Supp. 254 (W.D. Mo. 1974) (court permitted plaintiff who voluntarily resigned after being denied a promotion to recover back pay for the period following his resignation, minus his actual earnings during that time)).

[42]*Thorne,* 802 F.2d 1131; *Johnson v. Shalala,* 991 F.2d 126 (4th Cir. 1993), *cert. denied,* 513 U.S. 806 (1994).

pointed out, such a rule makes no sense in cases that do not involve promotion.[43]

We hold that Martini was not required to prove constructive discharge in order to recover damages for disability discrimination.

## B
### Proximate Cause

Boeing next argues that the trial court's instruction on proximate cause was improper and that Martini failed to establish that the alleged failure to accommodate was a proximate cause of the damages incurred after he resigned from Boeing.

■ Boeing neither assigned error to the trial court's proximate cause instruction nor quoted the challenged instruction as required by the Rules of Appellate Procedure.[44] Moreover, the only instructions given by the court and containing the term "proximate cause" that Boeing includes in the appendix to its opening brief are instructions 22 and 24.[45] Neither appears to be an improper instruction. In view of Boeing's failure either to assign error to the specific instruction that it challenges or to adequately explain in its brief the exact nature of its challenge to specific instructions, we decline to address further the challenge to the court's instructions.

■ Boeing also contends that to prove proximate cause,

---

[43]*Thorne*, 802 F.2d at 1134-35.

[44]*See* RAP 10.3(g).

[45]Instruction 22 states:

"You may award damages for the emotional distress proximately caused by Boeing's discriminatory acts, only if you find for Mr. Martini on his discrimination claim."

Instruction 24 states:

"Mr. Martini is entitled to recover damages for lost compensation for periods during which he was willing and able to work. In addition, Mr. Martini is entitled to recover damages for lost compensation for periods during which he was unable to work, if his inability to work was proximately caused by Boeing's failure to accommodate."

Martini was required to present medical testimony to the effect that the alleged wrong probably or more likely than not caused the aggravation of his disabilities. Boeing argues that Martini did not meet this burden, pointing to the testimony of Dr. Ries.

Boeing correctly states the requirement to show causation between its wrongful acts and Martini's injuries.[46] But Dr. Ries' testimony provides substantial evidence for a finding that Boeing proximately caused Martini's inability to work after his termination. At the beginning of his direct examination of Dr. Ries, Martini's counsel said:

> Doctor, I'm going to ask you for your opinions at different times throughout this testimony, and I'll ask that you respond on a more likely than not to a reasonable medical certainty basis.

He then proceeded to ask Dr. Ries:

> Q: . . . . Doctor, at that examination did you form an opinion as to Mr. Martini's ability to work in 1991?
>
> A: It was my opinion that he was unable to work.
>
> . . . .
>
> Q: All right. Do you have an opinion as to what caused his inability to work?
>
> A: Yes.
>
> Q: What is that opinion?
>
> A: My opinion is that, Mr. Martini had a long-standing depression which was severely disabling him, that he was unable to function adequately, and that his depression was interacting in a viciously cyclic manner.
>
> With his medical problems and with his job stresses and that one thing was feeding the next and it kept exacerbate — one thing exacerbated the next, and — and he was just getting worse and worse.

---

[46]*Xieng v. People's Nat'l Bank*, 63 Wn. App. 572, 582, 821 P.2d 520 (1991), *aff'd*, 120 Wn.2d 512, 844 P.2d 389 (1993).

In addition, Dr. Conway, Martini's treating psychiatrist, testified that Martini was suffering from a major depressive episode in early 1990. He stated that the major stressor Martini suffered was job-related stress. This testimony supports a finding of proximate cause as well.

Boeing also contends that because Martini was not constructively discharged, no legal cause exists to support the award of postdischarge losses. This is essentially the same argument that Boeing makes with respect to post-resignation damages. Because Martini's right to damages springs from disability discrimination, not constructive discharge, we reject this argument.

## III

### Evidentiary Rulings

We review the trial court's admission of evidence for an abuse of discretion.[47] To show that the trial court abused its discretion, Boeing must show that its use of discretion was "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons."[48]

Boeing argues the court abused its discretion by allowing references during trial to harassment. Martini's counsel mentioned it in opening argument. Martini's counsel also questioned him about incidences of harassment.

Boeing first argues that the evidence is irrelevant to the reasonable accommodation issue. This argument is not persuasive. Dr. Conway testified that Martini's job-related complaints focused in part on his co-workers' lack of sympathy regarding his sleep apnea. Thus, evidence of harassment is relevant to how Martini's job played a role in his disability.

Boeing next argues that the evidence is more prejudi-

---

[47]*Erickson v. Robert F. Kerr, M.D., P.S.*, 125 Wn.2d 183, 191, 883 P.2d 313 (1994).

[48]*State ex. rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

cial than probative and therefore inadmissible under ER 403. ER 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Boeing contends that evidence of bad acts other than those underlying a claim at bar "have been deemed inherently prejudicial." None of the cases that Boeing cites supports this proposition.

In *Moorhouse v. Boeing Co.*,[49] the trial court excluded testimony of six witnesses who, in addition to the plaintiff, had commenced age discrimination suits against Boeing. The court stated that allowing these plaintiff witnesses to testify regarding their own layoffs would in effect force the defendants to try all the plaintiffs' claims at once.[50] In *Dickerson v. Chadwell, Inc.*,[51] the court simply does not state that the admission of other bad acts is inherently prejudicial. The other federal cases Boeing cites are distinguishable from this case.[52]

We cannot say that the testimony was so prejudicial as to render the trial court's decision to admit it an abuse of discretion.

Boeing next challenges the trial court's refusal to give

---

[49]501 F. Supp. 390 (E.D. Pa. 1980).

[50]501 F. Supp. at 393.

[51]62 Wn. App. 426, 433, 814 P.2d 687 (1991), *review denied*, 118 Wn.2d 1011 (1992).

[52]*Schrand v. Federal Pac. Elec. Co.*, 851 F.2d 152 (6th Cir. 1988) (testimony of two other employees that they were terminated due to age was not relevant to issue of whether plaintiff was terminated due to age where different individual made the decision to terminate, and prejudice outweighed any possible probative value); *Kinan v. City of Brockton*, 876 F.2d 1029 (1st Cir. 1989) (holding that trial court's decision to exclude evidence was not an abuse of discretion); *United States Football League v. National Football League*, 842 F.2d 1335 (2d Cir. 1988) (holding that trial court's exclusion of at best marginally relevant evidence was not an abuse of discretion); *Kramas v. Security Gas & Oil Inc.*, 672 F.2d 766 (9th Cir.) (trial court did not abuse its discretion by excluding evidence with limited probative value), *cert. denied*, 459 U.S. 1035 (1982); *Wingfield v. United Techs. Corp.*, 678 F. Supp. 973 (D. Conn. 1988) (evidence of discriminatory acts before statute of limitations not admissible because they did not establish a continuous practice or policy of discrimination, and because such evidence would likely confuse the jury, unfairly prejudice the defendant, and unduly delay the trial).

an instruction to cure the statement of Martini's counsel regarding harassment during his opening statement. Martini's counsel argued that "we'll show you that he was discriminated against because of his disabilities and that he was harassed, and he was also not accommodated." Boeing contends that the trial court's failure to give its proposed instruction 15(b) warrants a new trial.[53]

■■ We review a trial court's decision not to give a proposed instruction for an abuse of discretion.[54] The trial court did not abuse its discretion by failing to give a curative instruction to remedy a one-sentence misstatement in an opening argument. Boeing contends that the "evidence" of harassment was prejudicial, but the opening statement is not evidence and the trial court so instructed the jury.[55] Further, there is nothing to show that the jury verdict was likely influenced by this passing remark.

## IV

### Subrogation

■■ Boeing, a self-insurer under the Industrial Insurance Act (IIA), sought to be subrogated to Martini's future IIA benefits, specifically time loss and pension payments. As we understand the argument, the basis for benefits under the IIA related to a shoulder injury Martini suffered while on the job in England conducting AWACS training. The trial court granted Boeing's request with respect to time loss but denied it with respect to pension

---

[53]Boeing's proposed instruction 15(b) states that "[d]uring opening statements, Mr. Martini's attorney asserted that Mr. Martini was 'discriminated against because of his disabilities in that he was harassed.' You are instructed that there is no harassment claim before you and that you should disregard [counsel for Martini]'s statement."

[54]*Goodman*, 75 Wn. App. at 68.

[55]The trial court instructed the jury that "[c]ounsel['s] remarks, statements and arguments are intended to help you understand the evidence and apply the law. They are not evidence, however, and you should disregard any remark, statement or argument which is not supported by the evidence or the law as given to you by the judge." *See State v. Brown*, 132 Wn.2d 529, 940 P.2d 546, 565 (1997).

benefits that Martini may receive. The court ruled that Boeing is not entitled to subrogation to Martini's future workers' compensation pension payments because these benefits are welfare benefits that are a collateral source to the damages awarded in this case. That ruling was erroneous.

Our courts have repeatedly held that IIA benefits that compensate for lost wages are not subject to the collateral source rule.[56]

Martini argues that permanent disability benefits are not compensation for lost wages, and therefore the court may not subrogate or offset them. He cites *Goodman* for the proposition that "workers' compensation benefits which represent lost wages, may be deducted from back pay awards, but workers' compensation benefits for permanent physical disabilities may not."[57] But the case from which this rule is derived does not support its extension to this case. In *Canova v. N.L.R.B*,[58] the Ninth Circuit decided that a back pay award for discriminatory discharge should not be offset by a permanent disability award granted under California law. It stated that "[a]n award which is reparation for permanent physical injury . . . is not compensation for loss of wages during a particular period and is not deductible."[59] But the court noted that the California Supreme Court had specifically held that awards under the California permanent disability scheme are not payment for lost wages.[60]

In contrast, we have held that there is no distinction in character between temporary total disability and perma-

---

[56]*Goodman*, 75 Wn. App. at 86-88.

[57]*Goodman*, 75 Wn. App. at 87. *See also Wheeler v. Catholic Archdiocese*, 124 Wn.2d 634, 880 P.2d 29 (1994).

[58]708 F.2d 1498 (9th Cir. 1983).

[59]*Canova*, 708 F.2d at 1504.

[60]708 F.2d at 1504 (citing *Russell v. Bankers Life Co.*, 46 Cal. App. 3d 405, 120 Cal. Rptr. 627 (1975)).

nent total disability under the Washington scheme.[61] In *Weyerhaeuser Co. v. Farr,* we concluded that "permanent total disability benefits under RCW 51.32 are intended as a replacement for lost income . . . ."[62]

In addition, the trial court should have subrogated Boeing to Martini's pension benefits because the benefits are designed to compensate Martini for a shoulder injury separate from the disability discrimination he suffered. In *Wheeler v. Catholic Archdiocese,*[63] our Supreme Court held that the collateral source rule does not apply where compensation is made for two different injuries. Thus, the trial court erred by denying an offset.

We affirm the orders of the trial court, except for the denial of subrogation, which we reverse, and the award of attorney fees, which we vacate and remand with directions. We award attorney fees on appeal to Martini, the amount of which shall be determined by the trial court on remand.

The remainder of this opinion has no precedential value and will not be published.[64]

BAKER, C.J., and WEBSTER, J., concur.

Review granted at 134 Wn.2d 1019 (1998).

[61]*Weyerhaeuser Co. v. Farr,* 70 Wn. App. 759, 763-64, 855 P.2d 711 (1993), *review denied,* 123 Wn.2d 1017 (1994).

[62]70 Wn. App. at 765.

[63]124 Wn.2d at 640-41.

[64]RCW 2.06.040.